**UNITED STATES of America, Appellee,**

v.

**Michael HILL, Appellant.**

No. 90–2517.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1991.

Decided Sept. 4, 1991.

Terrance Poppe, Lincoln, Neb., for appellant.

Alan Everett, Asst. U.S. Atty., Lincoln, Neb., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Michael Hill appeals his forty-eight-month sentence of imprisonment imposed

by the District Court[1] after he pleaded guilty to transmitting in interstate commerce a telephone communication containing a threat to kidnap, 18 U.S.C. § 875(c) (1988). We affirm.

The report of the pre-sentence investigation (PSI) in this case states that on March 5, 1990, Hill (eighteen years old), drove Maggie Dobbins (thirteen years old), Cindy Smith (fifteen years old), and Brian Smith (sixteen years old) from North Platte, Nebraska, to Florida in a car Hill had acquired from Tina Vaughn. According to the PSI, Dobbins stated she left Nebraska willingly, but along the way wished to return home. On March 10 Hill was arrested in Florida for carrying a concealed weapon. Dobbins returned to North Platte.

Hill was released from custody and went to his grandmother's residence in Ohio. On March 13 he called Dobbins's school and, using a false name, left a message for Dobbins to return his call. School officials gave the message to Dobbins's mother who called the phone number and discovered Hill was the caller. Hill told her he was returning to North Platte to take her daughter away. Dobbins's mother informed Hill that Dobbins did not want to leave with him. Hill stated he was going to take her anyway and that no one could stop him because Dobbins was "bought and paid for."

On March 16 Hill returned to North Platte and went to Vaughn's residence. Hill told Vaughn and her friend, Shannon Nelson, that the authorities were looking for him, that he wanted to paint his car so it would not be recognized, and that he wanted them to hide him until 3:08 when school let out. Hill was arrested at Vaughn's residence before 3:08. Pursuant to a plea agreement, Hill pleaded guilty to one count of threatening to kidnap Dobbins; one count of threatening to kidnap another girl was dismissed.

The PSI states that Hill told the probation officer that he attempted to call Dobbins in order to find Cindy Smith, his fiancee. He did not believe he was threatening to kidnap Dobbins when he spoke to her mother, because he thought she still wanted to run away from home. Hill "wish[ed] [the offense] would have never happened." Clerk's Record at 27. He believed "[t]here's been wrong done" and was "willing to make amends to change all this." Id.

The PSI set Hill's base offense level at twelve, United States Sentencing Commission, Guidelines Manual, § 2A6.1(a) (Nov. 1989) (threatening communications), and increased it by six because Hill engaged in conduct evidencing an intent to carry out the threat, U.S.S.G. § 2A6.1(b)(1). Hill was assessed with a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1, by intimidating Dobbins, based on the statement of Dobbins's mother that he continually attempted to telephone Dobbins collect two or three times a week after he was in custody. Hill also was given a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. Hill's adjusted offense level of eighteen and criminal history category of III resulted in a sentencing range of thirty-three to forty-one months.

Hill objected to the addition of six levels under U.S.S.G. § 2A6.1(b)(1), arguing that returning home to North Platte was not conduct indicating an intent to carry out a threat, that he mentioned painting his car to avoid being stopped for pending misdemeanor charges and not to avoid detection in the instant offense, and that in view of his attempt to send a letter of apology to Dobbins and her mother, "it was likely that the intent of his calls was to apologize," and that his attempted calls did not "mislead or deceive" authorities or the Dobbinses.

At his sentencing, Hill testified that Dobbins went voluntarily with him to Florida, never indicated to him she wanted to return home, and had many opportunities to call home. Hill testified he called Dobbins's school to make sure she was all right and to locate Cindy Smith. He testified he nev-

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

er "straight out" told Dobbins's mother that he was returning to North Platte to get Dobbins and denied telling her that Dobbins was "bought and paid for." Sentencing Transcript at 9. He stated he returned to North Platte because it was his home and he was trying to find Smith. He admitted he stopped at Vaughn's residence and told Vaughn and Nelson he wanted to paint his car and leave town to avoid the local authorities. He denied making collect calls to Dobbins's residence while he was incarcerated. The court sustained the government's hearsay objection when Hill began to explain what his roommate said about who made the collect calls. *Id.* at 14. On cross-examination, Hill denied he told Vaughn or Nelson that he was in North Platte to take Dobbins or that Dobbins was "bought and paid for" and stated that he was only going to take her to his North Platte residence where she could live. *Id.* at 16. He also denied ever threatening to kidnap Dobbins.

Nelson testified that Hill told Vaughn and her that he wanted to paint the car to avoid getting caught with Dobbins. She testified that Hill told them numerous times that he was going to Dobbins's school to get her and take her back to Florida, and that he told them Dobbins was "bought and paid for." *Id.* at 31. Dobbins testified that she initially left for Florida voluntarily because she thought they were going to California and she was going to receive $5000 when she got there. She testified she later changed her mind, but Hill prevented her from calling home. She testified, over Hill's objection, that she and other members of her family received five to ten collect phone calls in which the operator would ask them if they would receive a phone call from Hill, and that they refused these calls. *Id.* at 41–43.

The District Court found Hill had engaged in conduct evidencing an intent to carry out his threat to kidnap Dobbins, based on his return to North Platte and his statements about painting the car to avoid detection by the authorities. The court found that Hill returned to North Platte to pick up Dobbins and leave, and not to re-

turn to his home. The court found that Hill made the collect calls to Dobbins, and further found that Hill attempted to obstruct justice because "[c]alling her over and over again ... and being rejected over and over again was hardly calculated to cause anybody to suppose that he wanted to apologize." *Id.* at 75. The court also found that Hill had not accepted responsibility, because he failed to admit what he did and lied about it. Finally, the court found that Hill's adjusted offense level was twenty, resulting in a sentencing range of forty-one to fifty-one months. *Id.* at 78.

Attacking his forty-eight-month sentence, Hill appeals, raising the same arguments he made to the District Court. Although Hill states that his arguments present mixed questions of law and fact, the government correctly argues that they merely challenge the District Court's factual findings. When reviewing a sentence, we "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988).

Our examination of the record satisfies us that it supports the District Court's findings that Hill engaged in conduct evidencing an intent to carry out his threat to kidnap Dobbins, that he attempted to obstruct justice, U.S.S.G. § 3C1.1 comment. (n. 1(d)), *see United States v. Penson*, 893 F.2d 996, 998 (8th Cir.1990) (district court properly enhanced sentence where defendant threatened witness and attempted to mislead agents with false information), and that he failed to accept responsibility, *see United States v. Jones*, 875 F.2d 674, 676 (8th Cir.) (per curiam) (district court properly denied reduction because defendant testified falsely), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). These findings therefore are not clearly erroneous. We reject as entirely without merit Hill's arguments that the District Court's evidentiary rulings during the sentencing hearing were inherently unfair; these rulings were within the court's discretion and we see no abuse of that discretion.

■ Appellate review of sentences under the sentencing guidelines must proceed in a manner that gives due deference to the informed discretion of the trial judge. Here, the District Court committed no error of law and made findings of fact that are not clearly erroneous. We defer to the sentencing court in its application of the guidelines to the facts. *See* 18 U.S.C. § 3742(e). The sentence imposed by the District Court is affirmed.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion with one exception. I do not believe that the record supports the two-level increase for obstruction of justice, an increase which resulted in at least seven months being added to Hill's sentence. When determining whether the record supports this upward adjustment, we must keep in mind that the government had the burden of proving by a preponderance of the evidence the facts supporting this upward adjustment. *See United States v. Townley*, 929 F.2d 365, 369–70 (8th Cir.1991) (preponderance-of-the-evidence standard applies in most cases, although clear-and-convincing standard might apply in exceptional cases). Here, the government failed to carry its burden, and the case should be remanded to the district court with instructions to resentence the defendant without an enhancement for obstruction of justice.

The United States Attorney stated that the obstruction adjustment should be made because of a series of phone calls Hill made to the Dobbins' household before and after his arrest. It is inappropriate, of course, to consider the threats Hill made prior to his arrest or the actions he took in carrying out the threats as evidence justifying an additional two-level increase for obstruction of justice: Hill had already been sentenced for the pre-arrest threats and received a six-level upward adjustment for the conduct evidencing an intent to carry out the threat.

Thus, there was only one proper basis for enhancing Hill's sentence for obstruction of justice: the telephone calls made by Hill to the Dobbins' residence after he was incarcerated. The district court made the following findings in that regard:

[T]here is testimony in this case which is persuasive to me that Mr. Hill made several calls, Maggie Dobbins, I think, said perhaps six to 10 or something like that, calls while he was incarcerated. And it's true that none was accepted. But they all were identified as coming from him. If he had intended to mean by that that he wanted to apologize there are other ways that would have been quite simple for him to accomplish that purpose. Calling her over and over again by collect call ... and being rejected over and over again was hardly calculated to cause anybody to suppose that he wanted to apologize. It had the opposite effect, and I think reasonably so.... So I'm finding the gist of paragraph 29 [of the PSI] to be true. That he did ... attempt to obstruct justice by making the telephone calls.

*Id.* at 75–76. As the district court noted, all of the post-arrest calls were collect, and the Dobbins family did not accept *any* of them. Consequently, the district court could only speculate as to why Hill called Dobbins.

The mother, Mona Dobbins, was in the courtroom but was not called by the government as a witness. Maggie Dobbins testified that the whole incident caused her ill effects, including nightmares, which she did not have before. At no time, however, did she specifically relate her problems to the telephone calls Hill made after he was incarcerated, and she obviously had no knowledge of why Hill wanted to call because none of the phone calls was ever accepted. The only testimony relevant to the question of intent was Hill's uncontroverted testimony that he wanted to write to the Dobbins family to apologize. While the court did not credit Hill's testimony in this respect, the burden of proof still lay with the government to prove that the calls were made to intimidate Maggie Dobbins. There is no evidence in the record showing that this was the purpose of the calls, and it was sheer speculation for the court to so rule.

One other matter warrants discussion. The transcript of the guilty plea hearing indicates that the government was fully aware before indicting Hill that Hill took actions showing an intent to carry out his threat to kidnap. Hill, however, was never charged with that offense in an indictment. Nonetheless, the actions he took to carry out the threat resulted in an increase in his sentencing range from 15–21 months to 33–41 months. In other words, Hill's sentence was more than doubled by uncharged conduct. I recognize that our court has permitted this sentencing practice, but to me it is a clear violation of due process. *See United States v. Payne*, 940 F.2d 286, 295 (8th Cir.1991) (Heaney, J., concurring and dissenting).