———————————

No.  95-3633

———————————

United States of America,   *
                            *
            Appellee,       *
                            *
   v.                       *        Appeal from the United States
                            *        District Court for the Eastern
John McKinney,              *        District of Arkansas.
                            *
            Appellant.      *

———————————

Submitted:  April 11, 1996

Filed:  July 1, 1996

———————————

Before MAGILL and LOKEN, Circuit Judges, and GOLDBERG,[*] Judge.

———————————

GOLDBERG, Judge.

A jury convicted John McKinney of threatening to assault a member of Congress, and the district court[1] sentenced him to 18 months in prison. On appeal, Mr. McKinney makes the following arguments:  (1) the district court erred by admitting certain inculpatory statements that he made; (2) the evidence presented at trial was insufficient to support his conviction; and (3) the district court applied the incorrect sentencing guideline.  We affirm.

———————————

[*]THE HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

[1]THE HONORABLE GEORGE HOWARD, JR., United States District Judge for the Eastern District of Arkansas.

## I.  BACKGROUND

In 1994, a United States Congresswoman from Arkansas, Blanche Lambert, received several letters that contained menacing, obscene, and anti-semitic remarks.  Most of the letters were signed by John McKinney of Poinsett County, Arkansas (the "signed letters").  One letter, however, was unsigned (the "unsigned letter").  This letter included a particularly explicit threat to the Congresswoman:

> You had better get you some body armour.  Remember it will not stop an icepick [sic] esp. in the eyes (my favorite).  My Vietnam speciality [sic].  34 to my name (2 American traitor captains).
>
> . . . I hope I get close enough to do my assignment soon.  The pick is 13 inche [sic] long.

The disturbing letters prompted the FBI to conduct an investigation.

On September 16, 1994, an FBI agent went to Poinsett County to interview Mr. McKinney.  The FBI agent had the Sheriff of Poinsett County drive him to Mr. McKinney's rural home.  When they arrived, Mr. McKinney awoke and came outside.  Although it was raining lightly, Mr. McKinney did not invite the FBI agent and the sheriff inside his home.  The agent and the sheriff therefore sought to speak with Mr. McKinney inside the sheriff's car.  Mr. McKinney willingly sat in the back seat of the car.  The record does not show whether the doors to the back seat could be opened from the inside.

The FBI agent questioned Mr. McKinney about the signed and unsigned letters that were sent to Congresswoman Lambert.  Mr. McKinney admitted that he had written the signed letters.  He did not, however, admit to writing the unsigned letter to her.  When the FBI agent finished questioning Mr. McKinney, Mr. McKinney

returned to his home.  The FBI agent did not intend to arrest Mr. McKinney at that time.

Mr. McKinney was eventually indicted on charges of threatening a member of Congress and mailing a threat, based upon the explicit threat in the unsigned letter sent to Congresswoman Lambert.  Mr. McKinney made a motion to suppress the statements that he made while in the sheriff's car, claiming that he should have received certain warnings pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  The district court denied the motion. At trial, Mr. McKinney's admission regarding the signed letters was admitted.  In addition, an expert testified that the handwriting in the signed letters matched the writing in the unsigned letter and its envelope. Another expert testified that Mr. McKinney's palm print was on the unsigned letter, and that someone else's fingerprints were on its envelope.

The jury found Mr. McKinney guilty of threatening a member of Congress, but it acquitted him of mailing a threat.  The district court denied Mr. McKinney's post-trial motion for acquittal and sentenced him to 18 months in federal prison.

## II.   <u>DISCUSSION</u>

### A.   <u>Miranda Warnings</u>

Mr. McKinney argues that he was entitled to <u>Miranda</u> warnings when the FBI agent questioned him because he was in custody at that time.  The United States argues that Mr. McKinney was not in custody because the authorities did not restrain his physical movement to a degree associated with arrest.

We review the district court's conclusions concerning custody under the "clearly erroneous" standard.[2] United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). We "must affirm unless the decision of the district court is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Jorgensen, 871 F.2d 725, 728 (8th Cir. 1989).

Miranda, 384 U.S. 436, established that a person "must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney," any time that person is taken into custody for questioning. Griffin, 922 F.2d at 1347. Custody occurs not only upon formal arrest, but also under "any other circumstances where the suspect is deprived of his freedom of action in any significant way." Id. (emphasis in original).

In determining whether a suspect is in custody, we "consider the totality of the circumstances." United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985). In doing so, we examine the following relevant factors: the length of interrogation, the accused's freedom to leave the scene, and the place and purpose of the interrogation. Id.

In addition, we examine certain factors that are often referred to as "indicia of custody":

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the

---

[2]We note that this standard may be reconsidered in light of Thompson v. Keohane, ___ U.S. ___ (1995) (holding that, in habeas corpus cases, federal courts should independently review state court custody determinations). We have reviewed Thompson, and we conclude that the result would be the same in this case if we utilized a de novo standard of review.

suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of questioning.

Griffin, 922 F.2d at 1349. The first three of these factors tend to mitigate against a finding of custody. Id. The last three factors tend to weigh in favor of a finding of custody. Id. A finding of custody does not, however, have to be supported by all six factors. Id.

In this case, relevant factors indicate that Mr. McKinney was not in custody when the authorities questioned him. First, the length of the interrogation does not indicate that Mr. McKinney was in custody, as the authorities did not speak with Mr. McKinney for a particularly long time. Second, although Mr. McKinney was questioned in the back seat of the sheriff's car, the evidence fails to prove that Mr. McKinney could not leave the scene. He was not handcuffed, and there is no evidence to show that he could not open the car doors. Third, Mr. McKinney helped to determine the place of questioning; he chose to remain outside in the rain when the authorities arrived, and he willingly sat in the sheriff's car. Further, the FBI's purpose in seeing Mr. McKinney was merely to interview him, not to take him into arrest.

Similarly, "indicia of custody" generally show that Mr. McKinney was not in custody when the FBI agent questioned him. As mentioned above, Mr. McKinney was not handcuffed during questioning. In addition, he answered questions voluntarily. These facts mitigate against a finding of custody. Moreover, the fact that the authorities neither mistreated Mr. McKinney, nor

dominated the conversation with him, indicates that Mr. McKinney was not in custody.  Finally, the fact that the authorities did not arrest Mr. McKinney corroborates the finding that he was not in custody.

Upon consideration of the totality of the circumstances, we find that substantial evidence and law support the finding that Mr. McKinney was not in custody when the FBI agent questioned him.  Accordingly, the district court's conclusion concerning custody is affirmed.

B.    Sufficiency of Evidence

Mr. McKinney also claims that the United States failed to meet its burden of proving that he threatened Congresswoman Lambert.  Mr. McKinney points out that in order to violate the law, one must communicate threatening thoughts to others.  Mr. McKinney claims that because the jury acquitted him of mailing a threat, the United States failed to prove that he communicated a threat.  The United States, on the other hand, claims that a defendant convicted by a jury on one count cannot attack that conviction because it is inconsistent with the jury's verdict of acquittal on another count.  The United States further claims that it presented sufficient evidence to support Mr. McKinney's conviction.

It is not necessary for a jury to reach consistent verdicts on two counts of an indictment.  United States v. Powell, 469 U.S. 57, 62 (1984). "[W]here truly inconsistent verdicts have been reached, `[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt .'" Id. at 64-65 (quoting Dunn v. United States, 284 U.S. 390, 393 (1932)). Indeed, a jury convinced of the defendant's guilt may decide not to convict on all counts through mistake, lenity, or compromise.  Powell, 469 U.S. at

65. Nevertheless, the state "is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause." Id.

Appellate review of a conviction on one count of an indictment takes place "independent of the jury's determination that evidence on another count was insufficient." Id. at 67. We will affirm the conviction if "the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt." Id.

Upon review, we find that the evidence adduced at trial supports a rational determination that Mr. McKinney is guilty, beyond a reasonable doubt, of threatening to assault a member of Congress. Mr. McKinney admitted that he wrote several signed letters to Congresswoman Lambert; these letters contain menacing, obscene, and anti-semitic remarks. The writing in the signed letters matches the writing in a very similar, unsigned letter and its envelope. In addition, Mr. McKinney's palm print is on the unsigned letter. The unsigned letter contains explicitly threatening remarks, and it was received by Congresswoman Lambert's office. Because this evidence supports a rational determination that Mr. McKinney is guilty, beyond a reasonable doubt, of threatening Congresswoman Lambert, we affirm Mr. McKinney's conviction.

C.    Sentencing Guidelines

Mr. McKinney claims that the district court applied the wrong United States Sentencing Guideline to his conduct. According to Mr. McKinney, the guideline for "Minor Assault" should apply. The United States claims that the applied guideline correlates with the conduct for which Mr. McKinney was convicted.

In "reviewing a sentence, we `shall accept the findings of fact of the district court unless they are clearly erroneous and

-7-

shall give due deference to the district court's application of the guidelines to the facts.'" <u>United States v. Hill</u>, 943 F.2d 873, 875 (8th Cir. 1991) (quoting 18 U.S.C. § 3742(e) (1988)).

Mr. McKinney was convicted of threatening to assault a member of Congress, in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 115(b)(4). Appendix A to the United States Sentencing Guidelines cross-references these statutory provisions with the guideline for "Threatening Communications," § 2A6.1. Because the district court sentenced Mr. McKinney pursuant to the guideline for "Threatening Communications," we affirm Mr. McKinney's sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-