*1074
 
 OPINION
 

 Per Curiam:
 

 On March 26, 1996, a Las Vegas Metropolitan Police (“LVMPD”) narcotics detection dog “alerted” to the presence of narcotics in a suitcase in the baggage transfer area at McCarran International Airport in Las Vegas. The bag was locked and bore a computerized numbered claim tag with the name “Gillis, Sarin.” The final destination of the bag was Newark, New Jersey. The detective (“Kelley”) working with the dog detained the bag, contacted LVMPD Detective Butterfield (“Butterfield”), relayed the information, and asked Butterfield to attempt to contact Sarin Gillis in the terminal.
 

 
 *1075
 
 Butterfield then recalled observing a woman, who seemed very disoriented and confused, deplane from a flight from Burbank, California. Butterfield and LVMPD Detectives McGowan (“McGowan”) and Briscoe (“Briscoe”) proceeded to the departure gate for the flight to Newark and observed the same woman. They approached, identified themselves, and inquired whether they could ask her a few questions. She agreed.
 

 The woman indicated that she was traveling from “Los Angeles somewhere” to Newark and agreed to show Butterfield her ticket. The airline ticket was issued in the name of “Sarina Gillis” for travel from Burbank to Las Vegas with a connection to Newark. The baggage claim ticket stapled inside the airline envelope was issued to “Gillis, Sarin,” and its number, HP-724397, matched the number on the bag on which the narcotics detection dog had alerted.
 

 Butterfield asked Gillis if she had a key for the lock, to which Gillis replied in the negative. Upon inquiry as to how she was going to open the bag at her final destination, Gillis shrugged her shoulders and stated that “she did not know.”
 

 Although Gillis denied packing the checked bag, she also stated that the bag belonged to her uncle who had done the packing, but that she had checked it and was taking it to Newark. Butterfield then informed Gillis that the dog had alerted on the bag for the presence of narcotics. Gillis denied knowing why and consented to a search of the bag and to LVMPD’s breaking of the lock. After Briscoe advised Kelley of the consent by radio transmission, Gillis stated that she was traveling with her uncle, “Derrick Taylor.”
 

 Kelley cut the lock on the suitcase and examined the contents, finding several cellophane bundles containing a green leafy substance that were wrapped in men’s clothing. Upon notification that the suitcase apparently contained contraband, Butterfield asked Gillis to accompany the detectives to the police substation.
 

 At the substation, in the presence of Kelley, Gillis reiterated that she had checked the suitcase with the airline, that it belonged to her uncle and, further, that she was unaware of its contents. Twenty-eight pounds of marijuana were recovered from the suitcase. Gillis was then placed under arrest.
 

 Meanwhile, the detectives learned that Gillis and appellant, Derrick Taylor (“Taylor”), were traveling under the same reservation through Las Vegas to Newark, New Jersey. With this information, officers approached Taylor and identified themselves. Taylor then consented to an interview.
 

 Taylor confirmed that he was traveling from Burbank to Newark. With Taylor’s permission, officers examined Taylor’s ticket and noted the identical itineraries. This notwithstanding, Taylor claimed to be traveling alone, denied knowing anyone on
 
 *1076
 
 the flight from Burbank, including “Sarina Gillis,” and denied carrying contraband. He then consented to a search of his person and carry-on luggage.
 

 After finding what they believed was a luggage key, the detectives detained Taylor and escorted him to the substation to determine whether the key fit the suitcase. Taylor consented to the detention. Upon reaching the substation, the officers found that Taylor’s key did not fit the lock.
 

 A comparison of the separate tickets issued to Gillis and Taylor confirmed the following: the tickets appeared to have been written by the same person and matched the writing on the envelope in Gillis’ possession; both tickets were purchased through the same travel agent; both tickets were purchased on March 26, 1996, with the same reservation number of JRKENH; the ticket numbers were consecutive; and the total fare for the two tickets was $725.00, paid in cash.
 

 Butterfield also noted the handwritten names of D. Taylor and S. Gillis on a white business envelope in Gillis’ possession. Additionally, a search of Gillis’ handbag incidental to Gillis’ arrest revealed a Wyndham Hotel room receipt in the name of Derrick Taylor, showing a one-night stay, check-in on March 25, and check-out on March 26, 1996. Taylor’s pants pocket contained a piece of paper with the letterhead of the Wyndham Hotel. Following these discoveries, Taylor was placed under arrest.
 

 Gillis waived her rights pursuant to Miranda v. Arizona, 384 U.S. 486 (1966), after Taylor’s arrest. Gillis then stated that Taylor was not her uncle, that he was a friend whom she had known for a couple of months and dated a couple of times, that he had paid her airfare to Los Angeles, and that she was not being paid any money to transport marijuana back to Newark. Although Gillis again denied knowing the contents of the suitcase, she stated that Taylor told her that he had flown to Los Angeles to give someone money and that she believed the money was in the suitcase. Gillis denied ever seeing the contents.
 

 En route to the Clark County Detention Center, the transporting officer advised Taylor of his
 
 Miranda
 
 rights. Taylor indicated that he understood his rights and then waived them. Upon reaching the detention center, Taylor admitted he knew Gillis and was very concerned for her “because she had never done anything like this before.” Taylor also confessed that the marijuana and clothing found in the suitcase belonged to him, that he had purchased both of the airline tickets, that the lock was a built-in “safeguard” to deter police from opening the suitcase, and that the lock would have been cut off at their final destination.
 

 Taylor was charged in separate counts with possession of a controlled substance, conspiracy to sell a controlled substance, and
 
 *1077
 
 transportation of a controlled substance. Taylor moved the district court to suppress the evidence found inside the suitcase and the statements made by him, arguing that the search of his suitcase was illegal because Gillis had no authority to consent to the search, and that his statements at the airport and at the detention center were the product of an illegal search and seizure.
 

 The court granted Taylor’s motion to suppress the evidence and the statements, concluding:
 

 It is true that [Gillis] was at the McCarran International Airport. She had her ticket, along with that ticket were baggage claims for the various luggage. Like counsel has indicated she did identify that that baggage belonged to her uncle. The state’s correct at one point we have a common situation that the luggage always belongs to somebody else. Based upon the information I have that the luggage was not necessarily marked with any identifiable information that it actually belonged to another party and the party was there in the airport and based upon the totality of the circumstances I’m going to grant your motion to suppress as to both issues because we find that the officers in this case, their actions not reasonable under the circumstances.
 

 We reverse.
 

 Taylor’s standing to assert a Fourth Amendment violation
 

 The state failed to raise the issue of standing before the district court. Generally, failure to raise an issue below bars consideration on appeal.
 
 See
 
 Emmons v. State, 107 Nev. 53, 61, 807 P.2d 718, 723 (1991). However, this court will address constitutional issues raised for the first time on appeal.
 
 See
 
 McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983).
 

 The state contends that Taylor has no standing to object to the police’s search of his suitcase because he had no reasonable expectation of privacy in the contents of the suitcase. Specifically, the state asserts that Taylor effectively abandoned his suitcase when he relinquished exclusive control of it to Gillis and disclaimed ownership of it by denying that he knew her.
 

 In order to assert a violation under the Fourth Amendment, one must have a subjective and objective expectation of privacy in the place searched or items seized.
 
 See
 
 Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). A person who voluntarily abandons his property has no standing to object to its
 
 *1078
 
 search or seizure because he “loses a legitimate expectation of privacy in the property and thereby disclaims any concern about whether the property or its contents remain private.” United States v. Veatch, 674 F.2d 1217, 1220 (9th Cir. 1981).
 

 Whether a person has abandoned his property is a question of intent, which we infer from words, acts, and other objective facts.
 
 See
 
 United States v. Jackson, 544 F.2d 407, 409 (9th Cir. 1976). “Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.”
 
 Id.
 

 We conclude Taylor did not abandon his suitcase. An individual does not abandon property upon a mere failure to openly exercise control over it prior to its search or where access and control over the property is shared with a third party.
 
 See
 
 United States v. Canada, 527 F.2d 1374, 1378 (9th Cir. 1975). Further, a disclaimer of ownership of the subject property must be express for standing purposes.
 
 See
 
 United States v. Sanders, 130 F.3d 1316, 1317 (8th Cir. 1997);
 
 Veatch,
 
 674 F.2d at 1221. Taylor’s denial that he knew Gillis does not constitute an express disclaimer of ownership. Accordingly, Taylor has standing to challenge the search.
 

 Authority to consent to the search
 

 1.
 
 Standard of review
 

 Review of a trial court’s determinations of authority to consent to a search requires consideration of both factual circumstances and legal issues.
 
 See
 
 United States v. Kim, 105 F.3d 1579, 1582 (9th Cir. 1997); State v. Miller, 110 Nev. 690, 694, 877 P.2d 1044, 1047 (1994) (“Issues concerning . . . consent . . . present mixed questions of law and fact.”). Thus, we review de novo the district court’s decisions regarding authority to consent.
 
 Kim,
 
 105 F.3d at 1582.
 

 2.
 
 Actual authority
 

 The Fourth Amendment prohibits unreasonable searches and seizures of individuals’ effects. U.S. Const. Amend. IV. A search conducted without a search warrant issued upon probable cause is considered unreasonable and unconstitutional unless the search
 
 *1079
 
 falls within a specific exception to the warrant requirement.
 
 See Katz,
 
 389 U.S. at 357. One such exception is the valid consent of a third party who possesses actual authority over or other sufficient relationship to the premises or effects sought to be inspected.
 
 See
 
 United States v. Matlock, 415 U.S. 164, 171 (1974).
 

 Actual authority is proved (1) where defendant and a third party have mutual use of and joint access to or control over the property at issue, or (2) where defendant assumes the risk that the third party might consent to a search of the property.
 
 See Kim,
 
 105 F.3d at 1582 (citing
 
 Matlock,
 
 415 U.S. at 171). Actual authority does not require an ownership interest in the property by the third party,
 
 see
 
 Frazier v. Cupp, 394 U.S. 731, 740 (1969);
 
 Canada,
 
 527 F.2d at 1379, and does not require the actual owner’s presence at the time of the search,
 
 see Matlock,
 
 415 U.S. at 170.
 

 In the case at bar, the district court concluded that the officers did not act reasonably under the totality of the circumstances because Gillis informed the officers that the suitcase belonged to Taylor, who was in the airport at that time. We conclude the district court erred because Gillis had actual authority over the suitcase.
 

 Taylor gave Gillis sufficient custody and control over his suitcase so as to assume the risk that Gillis might consent to a search of it. Indeed, Taylor entrusted his suitcase to Gillis under circumstances which he understood created a high risk that police might ask her to consent to such a search (it contained a controlled substance and appeared to belong to Gillis).
 
 See Canada,
 
 527 F.2d at 1379; United States v. Aguirre-Parra, 763 F. Supp. 1208, 1218 (S.D.N.Y. 1991); United States v. Gulma, 563 F.2d 386, 390 (9th Cir. 1977). Taylor gave Gillis custody and control not for the purpose of safekeeping but to transport a controlled substance and to avoid detection himself.
 
 Cf.
 
 United States v. Barry, 853 F.2d 1479, 1482-83 (8th Cir. 1988) (third party does
 
 not
 
 have actual authority where defendant retains control of claim ticket and key to locked suitcase and third party receives suitcase solely for safekeeping).
 

 Further, Gillis checked the suitcase under her own name and retained the baggage claim ticket. To protect his privacy interest, Taylor could have marked the suitcase, kept the baggage claim ticket, or accompanied Gillis throughout the airport in order to decrease the risk that Gillis might consent to a search. He did none of these things.
 

 
 *1080
 
 Thus, we conclude Gillis had actual authority because Taylor assumed the risk that Gillis might consent to a search of his suitcase.
 

 3.
 
 Apparent authority
 

 Even if Gillis did not have actual authority, we conclude that Gillis had at least apparent authority to consent to the search.
 

 Whether an individual has apparent authority to consent to a search must be judged against an objective standard, namely, would the facts available to the officer at that moment warrant a person of reasonable caution to believe that the consenting party had authority over the property.
 
 See
 
 Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) (citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968)). “Whether the basis for [authority to consent to a search] exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably.”
 
 Id.
 
 at 186. Thus, “ ‘the Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law.’ ” United States v. Salinas-Cano, 959 F.2d 861, 865 (10th Cir. 1992) (quoting United States v. Whitfield, 939 F.2d 1071, 1073-74 (D.C. Cir. 1991)).
 

 Specifically, whether apparent authority exists entails a three-part analysis:
 

 First, did the searching officer believe some untrue fact that was then used to assess the extent of the consent-giver’s use of and access to or control over the area searched? Second, was it under the circumstances objectively reasonable to believe that the fact was true? Finally, assuming the truth of the reasonably believed but untrue fact, would the consent-giver have had actual authority?
 

 United States v. Dearing, 9 F.3d 1428, 1429-30 (9th Cir. 1993) (citations omitted). Additionally, an officer should not act without further inquiry where the surrounding circumstances evince some degree of doubt in the mind of a reasonable person as to the consent-giver’s authority to consent to a search.
 
 See id.
 
 at 1430. That is, “in the absence of sufficient facts, officers have a duty to seek further information in order to determine whether they may reasonably infer that the [consent-giver] has the necessary authority to consent to an entry or search of the [property].” United States v. Rosario, 962 F.2d 733, 738 (7th Cir. 1992).
 

 
 *1081
 
 We conclude the facts were sufficient to allow officers to draw an inference that Gillis had apparent authority over the suitcase prior to the search based on a mistaken, but objectively reasonable, belief that Gillis had mutual use of the suitcase. As such, the officers had no duty to make further inquiry.
 

 Prior to the search, the officers discovered that Gillis checked the suitcase in her name and retained the baggage claim check. When asked how she planned to open the locked suitcase, given that she did not have a key, Gillis shrugged her shoulders and responded that she did not know. We conclude an officer reasonably could infer from this dubious response that Gillis knew the bag contained narcotics, had something to hide, and, therefore, was using the bag knowingly to transport narcotics across the country.
 

 Thus, per
 
 Dearing,
 
 Gillis had apparent authority over the suitcase and, therefore, could consent to the search, because the truth of the officer’s mistaken belief — that Gillis had mutual use of the suitcase — coupled with Gillis’ joint access to and control over the suitcase, as discussed
 
 supra,
 
 would provide Gillis with actual authority.
 

 Taylor’s statements to police
 

 The district court excluded Taylor’s statements as the fruit of an illegal search. The court did not rule expressly as to whether Taylor’s pre-arrest statements were made as part of a consensual and non-custodial interrogation, or whether Taylor’s post-arrest statements were made after a valid waiver of his
 
 Miranda
 
 rights. Because we conclude the officers conducted a legal search of Taylor’s suitcase, and because the parties stipulated to the facts contained in the police reports, we choose to resolve whether Taylor’s statements are admissible per
 
 Miranda.
 

 1.
 
 Taylor’s pre-arrest statements
 

 The state contends that Taylor’s incriminating statements made prior to his arrest are admissible because he was not in custody for purposes of
 
 Miranda.
 
 We agree.
 

 The Fifth Amendment privilege against self-incrimination provides that a suspect’s statements made during custodial interrogation are inadmissible at trial unless the police first provide a
 
 Miranda
 
 warning.
 
 See Miranda,
 
 384 U.S. at 479;
 
 see also
 
 Malloy v. Hogan, 378 U.S. 1, 6 (1964) (privilege applicable to states through Due Process Clause of Fourteenth Amendment). To determine whether a custodial interrogation has taken place, a
 
 *1082
 
 court must consider the totality of the circumstances, including the site of the interrogation, whether the objective indicia of an arrest are present,
 
 [1]
 
 and the length and form of questioning.
 
 See
 
 Alward v. State, 112 Nev. 141, 155, 912 P.2d 243, 252 (1996). An individual is not in custody for purposes of
 
 Miranda
 
 where police officers only question an individual on-scene regarding the facts and circumstances of a crime or ask other questions during the fact-finding process,
 
 see
 
 Garcia v. Singletary, 13 F.3d 1487, 1489 (11th Cir. 1994), or where the individual questioned is merely the focus of a criminal investigation.
 
 See
 
 United States v. Jones, 21 F.3d 165, 170 (7th Cir. 1994).
 

 Rather, an individual is deemed “in custody” where there has been a formal arrest, or where there has been a restraint on freedom of movement of the degree associated with a formal arrest so that a reasonable person would not feel free to leave.
 
 See
 
 United States v. Bengivenga, 845 F.2d 593, 598 (5th Cir. 1998); United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996). A suspect’s or the police’s subjective view of the circumstances does not determine whether the suspect is in custody.
 
 See
 
 Stansbury v. California, 511 U.S. 318, 323 (1994).
 

 We conclude that the totality of the circumstances makes evident that Taylor was not in custody when the statements at the airport were made.
 
 [2]
 
 The officers did not physically move or restrain
 
 *1083
 
 Taylor during their brief questioning of him, did not handcuff Taylor or draw their guns, and neither accused Taylor of anything nor informed him that he was not free to leave.
 
 See Moya,
 
 74 F.3d at 1119. Taylor did not ask to leave and did not make any statements that would lead a reasonable person to believe that he would be arrested immediately.
 
 See id.
 
 Additionally, Taylor was not under arrest at the time he made his statements, he voluntarily responded to the officers’ questions, he could move about freely during the questioning, and the officers did not employ strong-arm tactics or deception.
 
 See
 
 United States v. McKinney, 88 F.3d 551, 554 (8th Cir. 1996).
 

 Thus, we conclude Taylor was not in custody prior to his formal arrest for purposes of
 
 Miranda.
 
 Accordingly, his pre-arrest statements are admissible.
 

 2.
 
 Taylor’s post-arrest statements
 

 The state contends that Taylor’s post-arrest statements are admissible because the officers Mirandized Taylor and Taylor waived his rights. We agree.
 

 This court examines the facts and circumstances of a case in order to determine whether a defendant has executed a valid waiver of his Fifth Amendment right against self-incrimination after receiving
 
 Miranda
 
 warnings. Falcon v. State, 110 Nev. 530, 534, 874 P.2d 772, 775 (1994). We conclude that the facts and circumstances of the case at bar make evident that Taylor’s post-arrest statements are admissible because Taylor executed an effective waiver of his Fifth Amendment right against self-incrimination and validly confessed to his ownership of the marijuana.
 

 An effective waiver of one’s Fifth Amendment right against self-incrimination must be knowing and intelligent.
 
 Miranda,
 
 384 U.S. at 479; Tomarchio v. State, 99 Nev. 572, 576, 665 P.2d 804, 806-07 (1983). Further, a confession must be made freely and voluntarily, without compulsion or inducement.
 
 See
 
 Passama v. State, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987).
 

 Here, nothing in the record indicates that Taylor’s waiver of his
 
 *1084
 
 right against self-incrimination was anything but knowing and intelligent or that his confession was compelled or induced. Therefore, Taylor’s post-arrest statements are admissible.
 

 Accordingly, we reverse the order of the district court granting respondent’s motion to suppress and remand this matter for trial.
 
 [3]
 

 [1]
 

 These include (1) whether the suspect was told that the questioning was voluntary or that he was free to leave; (2) whether the suspect was not formally under arrest; (3) whether the suspect could move about freely during questioning; (4) whether the suspect voluntarily responded to questions; (5) whether the atmosphere of questioning was police-dominated; (6) whether the police used strong-arm tactics or deception during questioning; and (7) whether the police arrested the suspect at the termination of questioning.
 
 See
 
 United States v. McKinney, 88 F.3d 551, 554 (8th Cir. 1996). All seven factors need not be present in order to determine that the suspect was or was not in custody.
 
 See id.
 

 [2]
 

 The state, relying on United States v. Mendenhall, 446 U.S. 544 (1980), and its definition of “seizure” under the Fourth Amendment, argues that the officers had not placed Taylor in custody at the time of his pre-arrest statements because he had not been seized at that point. In
 
 Mendenhall,
 
 the Court concluded that an initially consensual encounter between a police officer and a citizen can become a seizure for Fourth Amendment purposes “if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.”
 
 Id.
 
 at 554. The state contends that, per
 
 Mendenhall,
 
 the definitions of “seizure” and “in custody” are the same given their focus on whether a reasonable person would feel free to leave. The state’s reliance on
 
 Mendenhall
 
 is misplaced. A seizure under the Fourth Amendment does not necessarily render a person in custody for
 
 Miranda
 
 purposes.
 
 See Bengivenga,
 
 845 F.2d at 598. Indeed, a traffic stop constitutes a seizure under the Fourth Amendment,
 
 see
 
 Delaware v. Prouse,
 
 *1083
 
 440 U.S. 648, 653 (1979), but does not place a person in custody under
 
 Miranda. See
 
 Berkemer v. McCarty, 468 U.S. 420, 440 (1984). Similarly, officers may seize an individual to perform a pat-down search of the individual’s outer clothing,
 
 see
 
 Terry v. Ohio, 392 U.S. 1, 30 (1968), but such does not render a person in custody per
 
 Miranda. See Berkemer,
 
 468 U.S. at 439-40.
 

 [3]
 

 Taylor also challenges the voluntariness and certainty of Gillis’ consent to search the suitcase. Taylor failed to raise these issues below. Thus, he is barred from raising them on appeal.
 
 See
 
 Emmons v. State, 107 Nev. 53, 807 P.2d 718 (1991).