# IN THE SUPREME COURT OF THE STATE OF NEVADA

THOMAS MATTHEW SUPRANOVICH,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 69355

FILED

JUL 2 6 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder, victim 60 years of age or older. Eighth Judicial District Court, Clark County; Susan Johnson, Judge. Appellant Thomas Supranovich raises six issues on appeal: his right to self-representation, the sufficiency of the evidence, the for-cause removal of a juror, the denial of his suppression motion, the sufficiency of a jury admonishment, and alleged cumulative error. Having considered the parties' arguments and reviewed the record, we affirm the judgment of conviction.

Thomas Supranovich lived with his 88-year-old father, Demetry Supranovich. Their relationship grew hostile, and a constable served Thomas with a five-day notice to leave Demetry's home. Ten days later, police conducted a welfare check on Demetry. Thomas answered the door, and when officers entered, they discovered Demetry's body. Thomas told police that he had seen Demetry alive four hours earlier when making him breakfast, however, these statements were inconsistent with an autopsy report. In addition, police found a pillow beside Demetry with blood on it, an abrasion in Demetry's mouth consistent with smothering, and a broken window with Thomas's blood on it. When police arrived at the home,

18- 28638

Thomas had approximately $2,000 on his person, and $3,300 had been withdrawn from Demetry's bank account shortly before his death. The jury found Thomas guilty of second-degree murder, victim 60 years of age or older.

*Right to self-representation*

Thomas argues that the district court violated his right to self-representation by denying his requests to represent himself.

"A criminal defendant has the right to self-representation under the Sixth Amendment of the United States Constitution and the Nevada Constitution." *Vanisi v. State*, 117 Nev. 330, 337, 22 P.3d 1164, 1169 (2001). "[C]ourt[s] should conduct a *Faretta* canvass to apprise the defendant fully of the risks of self-representation and of the nature of the charged crime." *O'Neill v. State*, 123 Nev. 9, 17, 153 P.3d 38, 43 (2007) (internal quotation marks omitted).[1] However, a district court may summarily "deny a defendant's request for self-representation where the . . . request is equivocal," even if "the district court fail[s] to specify its rationale." *Id.* at 17-18, 153 P.3d at 44 (internal quotation marks omitted). We review the district court's decision to deny a motion for self-representation for an abuse of discretion. *See Gallego v. State*, 117 Nev. 348, 362, 23 P.3d 227, 236-37 (2001), *abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 263 P.3d 235 (2011).

Here, Thomas sent a letter to the court indicating that it was his "intention[ ]" to request removal of his current counsel and retain other counsel in an advisory capacity. At the district court hearing, Thomas merely recited problems he perceived with his attorney and indicated that

---

[1]*See Faretta v. California*, 422 U.S. 806 (1975).

 

he had "considered" self-representation. Ultimately, however, Thomas agreed to "hash out" his concerns with counsel. Thus, to the extent Thomas requested to represent himself, that request was equivocal and the district court did not, therefore, violate Thomas's right to self-representation by failing to perform a canvass or by denying any such requests.

*Substitution of counsel*

Thomas argues that the district court abused its discretion by failing to adequately inquire about his conflict with counsel and denying his motion to substitute counsel.

This court reviews a district court decision denying a motion for substitute counsel for an abuse of discretion. *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004). In reviewing such decisions, this court considers three factors: "(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion." *Id.* (internal quotation marks omitted).

Here, Thomas made a timely request to remove counsel approximately one month prior to trial. Thereafter, the district court heard the full extent of Thomas's complaints regarding counsel during a suppression hearing, addressing each concern in turn. Turning to the extent of conflict, losing confidence in defense counsel does not create a genuine conflict when the defendant cannot provide legitimate reasons for it. *See Gallego*, 117 Nev. at 363, 23 P.3d at 237-38. Thomas points to several bases for his conflict with counsel, including alleged unconsented-to or needless filings and actions, issues with discovery, and alleged mistruths regarding a polygraph. However, as Thomas's counsel pointed out during the suppression hearing, Thomas's complaints dealt largely with strategic decisions belonging to counsel, *see New York v. Hill*, 528 U.S. 110, 114-15

 

(2000); *Howard v. State*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990), *abrogated on other grounds by Harte v. State*, 116 Nev. 1054, 13 P.3d 420 (2000), and the record indicates that counsel proffered sound explanations for each of Thomas's other complaints. Despite acknowledging tension in the attorney-client relationship, counsel did not leave "Thomas effectively un-represented at the hearing"; in fact, Thomas's counsel brought Thomas's concerns to the attention of the court and underscored that he did not want to take a position adverse to his client. Under these factual circumstances, we conclude that the district court conducted an adequate inquiry in this case and acted within its discretion in denying Thomas's request for substitute counsel.

*Juror removal for cause*

Thomas argues that the district court committed structural error by refusing to let him further question potential juror #130 before dismissing the juror for cause.

The district court maintains broad discretion in ruling on challenges for cause. *See Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178 (2014). Under NRS 16.030(6), "[t]he judge shall conduct the initial examination of prospective jurors and *the parties or their attorneys are entitled to conduct supplemental examinations which must not be unreasonably restricted.*" (Emphasis added.)

Here, juror #130 articulated his inability to remain impartial during voir dire, stating that his daughter was recently arrested for neglect of an elderly man, and he could not be fair to the State. Thereafter, Thomas requested to question the potential juror further, but the district court

denied the request.[2] Because juror #130 was less than unequivocal about his impartiality, he was correctly excused for cause. *Preciado*, 130 Nev. at 42, 44, 318 P.3d at 177, 178-79 (stating "that a prospective juror who is anything less than unequivocal about his or her impartiality should be excused for cause"). To the extent that the district court erred by failing to allow Thomas to conduct further questioning of juror #130, we conclude that any such error was harmless. *See id.* at 44, 318 P.3d at 178 (stating that a district court's ruling on "a challenge for cause is reversible error only if it results in an unfair empaneled jury"). There is no evidence that the empaneled jury was not impartial, nor was there evidence that Thomas was prejudiced. Therefore, we conclude that this issue is not grounds for reversal.[3]

---

[2]During oral argument before this court, the State claimed that Thomas agreed to dismiss juror #130, despite acknowledging in its answering brief that Thomas had asked to supplement the district court's initial examination of juror #130. Thomas has filed a motion requesting that this court disregard the State's oral argument statement and to take action to prevent the State from mischaracterizing the record in future matters. The State opposes the motion. Having considered the parties' arguments and the record, we agree with Thomas that the oral argument statement misstates the factual record and we grant Thomas's motion. Thus, we will not consider the State's argument in this regard, and we caution counsel not to overstate or misrepresent the record in the future.

[3]Thomas also argues that the district court violated NRS 6.010 in removing juror #130 for his failure to meet that statute's English proficiency requirement, and he challenges the constitutionality of NRS 6.010's English proficiency requirement on various grounds. We conclude that the record establishes that the district court dismissed juror #130 for bias, not for his failure to meet the language requirement. Therefore, we do not reach the constitutionality of NRS 6.010. *See Gebers v. State*, 118 Nev. 500, 506 n.11, 50 P.3d 1092, 1095 n.11 (2002) (stating that "constitutional question[s] will not be determined unless clearly involved, and a decision thereon is

SUPREME COURT
OF
NEVADA

(O) 1947A

*Sufficiency of the evidence*

Thomas argues that the State failed to present sufficient evidence to prove (1) corpus delicti or (2) malice aforethought to support a conviction for second-degree murder.

"[T]he test for sufficiency upon appellate review is . . . whether the jury, acting reasonably, could be convinced to that certitude by evidence it had a right to accept." *Edwards v. State*, 90 Nev. 255, 258-59, 524 P.2d 328, 331 (1974). Therefore, "the relevant inquiry is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Milton v. State*, 111 Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995) (internal quotation marks omitted).

*Corpus delicti*

To prove the corpus delicti of murder, "the State must demonstrate: (1) the fact of death, and (2) that death occurred by criminal agency of another." *West v. State*, 119 Nev. 410, 415-16, 75 P.3d 808, 812 (2003) (internal quotation marks omitted). Proof of criminal agency may be established through circumstantial evidence, including the circumstances surrounding the death. *See, e.g., id.* at 418, 75 P.3d at 813. Further, this court has determined that "the jury [is] at liberty to weigh [evidence that the decedent died from natural causes] along with the evidence that [the decedent] died by criminal agency." *Id.* at 418, 75 P.3d at 814.

---

necessary to a determination of the case" (internal quotation marks omitted)). Further, to the extent that Thomas argues that the district court dismissed other jurors based on NRS 6.010's language requirement, he fails to provide sufficient argument in this regard and therefore we will not consider it. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

Here, the State presented evidence that police found Demetry naked on a couch without cushions, an abrasion in Demetry's mouth was consistent with smothering, Demetry's blood was on the pillow found near him, and Thomas's blood was on a broken window. This evidence could allow a rational trier of fact to find that Demetry was murdered. Although appellant asserts that multiple natural disease processes could explain Demetry's death, the State was not required to affirmatively disprove each potential cause of death. Further, to the extent that Thomas argues that medical evidence is conflicting, the jury could properly weigh this evidence against the evidence that Demetry died by criminal agency. Accordingly, we conclude that the State presented sufficient evidence, independent of Thomas's statements, to establish the corpus delicti of second-degree murder.

*Malice aforethought*

Second-degree murder requires a finding of malice, express or implied. *Labastida v. State*, 115 Nev. 298, 307-08, 986 P.2d 443, 449 (1999). Express malice involves "deliberate intention" and malice is implied "when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." NRS 200.020(1), (2).

Here, as discussed above, the State presented sufficient evidence that Thomas murdered Demetry, including: the abrasion on Demetry's mouth and pillow with blood on it; the strained relationship between Thomas and Demetry, and Thomas's impending eviction from Demetry's home; Thomas's statements contradicting Demetry's time of death and stomach contents; Demetry's broken window with Thomas's blood on it; the $2,000 Thomas had on his person when several thousand dollars had been withdrawn from Demetry's bank account shortly before his

death; and police testimony that, upon being told that his father was dead, Thomas's demeanor appeared "insincere" and he stated that he wanted to avoid an autopsy. Viewing this evidence in the light most favorable to the prosecution, we conclude that it was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that Thomas killed Demetry with implied malice and that Demetry died from some criminal agency and not from natural causes. Thus, the evidence was sufficient evidence to support Thomas's conviction of second-degree murder.[4]

*Admission of un-Mirandized statements*

Thomas avers that the district court erred by denying his motion to suppress un-*Mirandized* pre-arrest statements made during two custodial police interviews.

A district court's determination regarding custody and voluntariness of statements for purposes of *Miranda* present a "mixed question[ ] of law and fact subject to this court's de novo review."[5] *Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005). *Miranda* warnings are

---

[4]Thomas also argues that (1) the district court erroneous denied his pretrial petition for a writ of habeas corpus, as probable cause did not support his being bound over by the justice court on the charge of first-degree murder; and (2) the district court abused its discretion by failing to issue an advisory verdict due to insufficient evidence of murder. Based on our review of the record, we conclude that the evidence supporting the justice court's bind over met the requirement for a probable cause determination. *Sheriff, Clark Cty. v. Potter*, 99 Nev. 389, 391, 663 P.2d 350, 352 (1983) (noting that "[p]robable cause to support an information may be based on slight, even marginal evidence" (internal quotation marks omitted)). Further, we conclude that, because the jury had sufficient evidence to convict Thomas, the district court did not abuse its discretion by refusing to issue an advisory verdict.

[5]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

 

"required when a suspect is subjected to a custodial interrogation," *Archanian v. State*, 122 Nev. 1019, 1038, 145 P.3d 1008, 1021 (2006), which a court determines by "consider[ing] the totality of the circumstances, including the site of the interrogation, whether the objective indicia of an arrest are present, and the length and form of questioning," *State v. Taylor*, 114 Nev. 1071, 1082, 968 P.2d 315, 323 (1998) (footnote omitted).

Here, we conclude that Thomas was not in custody during either disputed interview. *Rosky*, 121 Nev. at 191, 111 P.3d at 695 (explaining that, absent formal arrest, the pertinent inquiry regarding whether the defendant is in custody "is whether a reasonable person in the suspect's position would feel 'at liberty to terminate the interrogation and leave'" (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995))). The first interview was conducted in an unmarked police vehicle after Thomas agreed to the location, and detectives questioned him for less than one hour while he was in the front seat. Although police did not inform Thomas that the questioning was voluntary or that he was free to leave, they likewise did not state that he was not free to leave or that he was required to answer questions. Rather, Thomas was not under arrest, and he freely answered questions. Further, though in a vehicle, Thomas was not restrained or locked in the vehicle during the questioning. Finally, the police did not dominate the atmosphere of questioning or use strong-arm tactics, as the first interview was general in nature and consistent with a fact-finding investigation.

As to the second interview, one of the investigators testified that the interview lasted approximately twenty minutes and Thomas was not under arrest. While the officers did not tell Thomas that the questioning was voluntary or that he was free to leave, the officers indicated several

times that Thomas was not going to be arrested. In addition, the interview took place on the front porch of Demetry's home, and Thomas was not restrained during the questioning. Finally, although the atmosphere appears to have been police-dominated, there is no indication that Thomas was not answering the officers' questions voluntarily; in fact, Thomas initiated the end of questioning by requesting to retrieve his belongings, thereby demonstrating that Thomas felt free to leave under the circumstances. Because Thomas was not in custody during either interview, we conclude that the district court did not err in denying Thomas's motion to suppress and admitting Thomas's statements.

*Jury admonishment*

Thomas, relying on *Knuckles v. Commonwealth*, 315 S.W.3d 319 (Ky. 2010), argues that the district court violated his right to due process by failing to adequately admonish the jury regarding independent research prior to a seven-day stay in his trial—ordered by this court pending consideration of a writ petition—and by failing to canvass the jury regarding independent research after the stay.

As to the district court's admonishment prior to a separation, NRS 175.401 provides that the district court must admonish the jury regarding any form of independent research prior to each adjournment of the court. As to the delay of a trial as a due process violation, "proof of prejudice is generally a necessary . . . element of a due process claim." *State v. Autry*, 103 Nev. 552, 556, 746 P.2d 637, 640 (1987) (internal quotation marks omitted). Still, other courts have found that multiple-week delays violated a defendant's due process right even absent a showing of actual prejudice. *See, e.g., United States v. Hay*, 122 F.3d 1233, 1236 (9th Cir.

SUPREME COURT
OF
NEVADA

(O) 1947A

1997). When evaluating possible prejudice, courts may look at several factors, including:

> [1] the length of the delay, [2] whether there was a good reason for the delay, [3] whether the trial court properly admonished the jurors against communicating about the case with others prior to the separation, [4] whether the case was so complex that a prolonged interruption would have a significant effect on the jurors' ability to remember complicated facts, [5] whether alternatives to delaying the trial existed, and [6] the extent of publicity surrounding the case.

*Knuckles*, 315 S.W.3d at 323.

Here, Thomas fails to demonstrate how the district court violated his due process right through the district court's pre-stay admonishment or to the lack of inquiry when the trial resumed. The district court provided an admonishment regarding independent research prior to the stay in accordance with NRS 175.401.[6] Thomas fails to show how this admonishment was inadequate in light of the seven-day delay, and Nevada does not have a requirement to canvass the jury post-stay. Moreover, even if this court were to adopt the prejudice factors from *Knuckles*, they weigh against a finding of a due process violation in this case. First, a seven-day delay is not a significant amount of time. Further, the district court had no choice but to delay the case, as it was compelled to do so by this court.

---

[6]Thomas states, without more, that he does not concede that the district court complied with NRS 175.401 due to the admonishments directed in *Bowman v. State*, 132 Nev., Adv. Op. 74, 387 P.3d 202 (2016). We conclude that Thomas does not present adequate argument in this regard, and we therefore will not consider this issue. *See Maresca*, 103 Nev. at 673, 748 P.2d at 6.

Moreover, this case did not present complicated facts such that a seven-day delay would have a significant effect on the jurors' ability to remember the facts of the case. Finally, the record does not reflect extensive publicity surrounding the case. Therefore, we conclude that Thomas's claim fails.

Based on the foregoing, we

ORDER the judgment of conviction AFFIRMED.[7]

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

---

[7]Thomas also argues that cumulative error in this case warrants reversal. However, because we conclude that, at most, there was one harmless trial error, there are no errors to cumulate.

 

cc: Hon. Susan Johnson, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk