## BRIAN KEITH AVERY, Appellant, v.
## THE STATE OF NEVADA, Respondent.

No. 43928

March 16, 2006 129 P.3d 664

*Dennis E. Widdis*, Reno, for Appellant.

*George Chanos*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Joseph R. Plater III*, Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

In this appeal, appellant Brian Keith Avery contends that the district court erred in rejecting claims presented in his post-conviction

petition for a writ of habeas corpus alleging, in part, that his guilty plea was entered in violation of our holding in *Palmer v. State*[2] because he was not aware when he entered the plea that he would be subject to a sentence of lifetime supervision. Our decision in *Palmer* was decided after Avery's conviction became final. Thus, we consider as a matter of first impression whether *Palmer* applies retroactively to convictions that became final before *Palmer* was decided. We conclude that it does not. We further conclude the district court did not err in rejecting Avery's claims that he was not properly advised of the minimum sentence, that his counsel provided ineffective assistance, and that his guilty plea was invalid. We therefore affirm the order of the district court dismissing appellant's post-conviction petition.

## FACTS

In November 1999, Avery lived with his two stepdaughters, A., then 11 years of age, and D., then 10 years of age. On November 19, 1999, A. and D. were removed from the home they shared with Avery and their mother after a complaint of child neglect. A. made statements to the officer transporting her and D. to a care facility indicating that their grandfather, Avery's father, had sexually abused them. Police questioned Avery about the allegations, including a specific allegation that Avery's father had showered with A. and D. while he and the girls were naked. Avery confirmed the allegation and told the officer that he, too, had showered with A. and D.

In March, 2000, while returning from a counseling session, A. indicated to her mother that Avery had also sexually abused her and D. A.'s mother contacted the sheriff's office to report A.'s statements. The patrol officer who took the report contacted Detective Peggy Stahl, who, along with Detective Kathleen Bishop, interviewed A. and D. Detective Stahl then spoke with Avery by telephone between 9:00 and 9:30 p.m. that night. Detective Stahl asked Avery to come to the sheriff's office, but Avery told her he could not get there. Avery told Detective Stahl she could come to his house; she and Detective Bishop did so, arriving at Avery's house at about midnight. During the interview, Avery made a number of incriminating statements. Detectives Stahl and Bishop then radioed for a patrol car so Avery could be arrested and transported to the sheriff's office.

After hearing testimony from A., D., and Detective Stahl, a grand jury returned an indictment against Avery charging him with two counts of sexual assault of a minor and one count of lewdness

[2]118 Nev. 823, 59 P.3d 1192 (2002).

with a child under fourteen years of age. Avery agreed to plead guilty to one count of sexual assault of a minor in exchange for the State's agreement not to pursue the remaining two charges. The district court accepted the plea and subsequently sentenced Avery to serve a term of life in the Nevada State Prison with the possibility of parole after a minimum of twenty years. Avery also received the special sentence of lifetime supervision, pursuant to NRS 176.0931. Avery did not file a direct appeal. He then filed the instant petition for a writ of habeas corpus in the district court. The State filed a motion to dismiss the petition. The district court granted the State's motion and dismissed Avery's petition. This appeal followed.

## DISCUSSION

### Lifetime supervision

Avery argues his guilty plea was invalid because he was not aware before entering the plea that he would be subject to lifetime supervision. We held in *Palmer* that lifetime supervision is a direct consequence of a guilty plea and that when a defendant pleads guilty to an offense that is subject to lifetime supervision, the record must demonstrate that the defendant was aware of the consequence of lifetime supervision before entering his or her plea of guilty.[3] However, *Palmer* was decided after Avery's conviction became final.[4] Consequently, Avery's claim must be rejected unless our holding in *Palmer* applies retroactively, a question this court has not previously addressed.[5] We conclude that it does not.

---

[3]118 Nev. at 825, 59 P.3d at 1193.

[4]A conviction is final for the purposes of retroactivity analysis when a judgment has been entered, the availability of an appeal has been exhausted, and a petition for a writ of certiorari to the Supreme Court has been denied or the time to file such a petition has expired. *Colwell v. State*, 118 Nev. 807, 820, 59 P.3d 463, 472 (2002).

[5]We acknowledge that language in *Means v. State*, 120 Nev. 1001, 1017-18, 103 P.3d 25, 35-36 (2004) can be read to suggest that we applied the holding in *Palmer* retroactively in that case. One of the primary claims at issue in *Means*, however, was whether Means' trial counsel was ineffective for failing to file a direct appeal from Means' judgment of conviction. If so, Means would have been entitled to pursue direct appeal claims under our holding in *Lozada v. State*, 110 Nev. 349, 871 P.2d 944 (1994). Thus, under the circumstances of Means' case, the finality of the conviction could not be determined for the purpose of retroactivity analysis. *See Colwell*, 118 Nev. at 820, 59 P.3d at 472 (noting that a conviction becomes final for the purpose of retroactivity analysis when the availability of an appeal has been exhausted). Nonetheless, we now clarify that *Means* should not be read to suggest that the holding of *Palmer* will be applied retroactively to final convictions.

With two narrow exceptions, a new rule of criminal procedure will not be applied retroactively.[6] The threshold question, then, is whether *Palmer* announced a new rule. In *Colwell v. State*, we explained:

> There is no bright-line rule for determining whether a rule is new, but there are basic guidelines to follow. As this court has stated, "When a decision merely interprets and clarifies an existing rule . . . and does not announce an altogether new rule of law, the court's interpretation is merely a restatement of existing law." Similarly, a decision is not new if "it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law."[7]

We conclude that *Palmer* did announce a new rule. Far from merely interpreting or clarifying an existing rule, in *Palmer* we explored whether lifetime supervision was a direct consequence or a collateral consequence of a guilty plea to a sexual offense. We also concluded that lifetime supervision was not analogous to previously considered cases, *e.g.*, we specifically concluded that lifetime supervision was not analogous to parole, which we had previously determined was a collateral consequence of a guilty plea.[8]

Our conclusion that the rule is new, however, does not end our inquiry. As we held in *Colwell*:

> When a rule is new, it will still apply retroactively in two instances: (1) if the rule establishes that it is unconstitutional to proscribe certain conduct as criminal or to impose a type of punishment on certain defendants because of their status or offense; or (2) if it establishes a procedure without which the likelihood of an accurate conviction is seriously diminished.[9]

Our holding in *Palmer*—that the mandatory sentence of lifetime supervision is a direct consequence of a guilty plea of which a de-

[6]*See Teague v. Lane*, 489 U.S. 288, 305-10 (1989) (plurality opinion); *see also Colwell v. State*, 118 Nev. at 818-20, 59 P.3d at 471-72 (adopting a modified version of the *Teague* framework).

[7]118 Nev. at 819, 59 P.3d at 472 (quoting *Buffington v. State*, 110 Nev. 124, 127, 868 P.2d 643, 645 (1994); *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002)).

[8]*Palmer*, 118 Nev. at 829-30, 59 P.3d at 1196-97 (citations omitted).

[9]118 Nev. at 820, 59 P.3d at 472.

fendant must be previously aware before entering the plea—neither holds that it is unconstitutional to proscribe any conduct, nor that it is unconstitutional to impose a type of punishment on certain defendants because of their status or offense. Thus, the first exception is not at issue in this case.

We further conclude that our holding in *Palmer* does not fall within the second exception. We can envision few cases in which the accuracy of a conviction of a defendant who pleads guilty to a sexual offense will be *seriously* diminished by the failure to advise the defendant of a mandatory sentence of lifetime supervision. While such advice may influence some defendants to reject a plea offer and insist on going to trial, decisions to plead guilty will generally turn on other factors, including the potential sentence, the State's agreement to forgo other charges, the risk of habitual criminal adjudication, prior convictions, the strength of the State's case, and any other concessions or sentencing recommendations the State may be willing to make. In sum, we conclude that *Palmer* did not announce "a procedure without which the likelihood of an accurate conviction is seriously diminished." The failure to advise a defendant of the consequence of lifetime supervision is especially unlikely to diminish the likelihood of an accurate conviction, or to influence a defendant's decision to reject a plea and insist on going to trial, where, as here, the defendant is fully and completely advised that a guilty plea will subject him to a potential sentence of life in prison. Accordingly, we conclude that the district court did not err in rejecting Avery's claim that his plea was entered in violation of our holding in *Palmer*.

*Minimum sentence*

Avery next argues that the district court erred in rejecting his claim that his plea was invalid because the trial court failed to advise him of the minimum sentence he faced if he pleaded guilty. This claim is belied by the record.[10] The district court is not required to utter "talismanic phrases" but is instead given wide latitude in fulfilling the requirements for a valid plea hearing.[11] In this case, the district court advised Avery that "the maximum sentence is life with parole after a minimum twenty years." Moreover, Avery signed a guilty plea agreement prior to entering his plea that expressly advised him he could be sentenced to serve a prison term

---

[10]*See Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984) (holding that a petitioner is not entitled to an evidentiary hearing on claims which are belied by the record).

[11]*Bryant v. State*, 102 Nev. 268, 271, 721 P.2d 364, 367 (1986).

of life with parole after twenty years. Avery was sufficiently advised that he would spend at least twenty years in prison if he pleaded guilty. We therefore conclude the district court did not err in dismissing this claim.

## Ineffective assistance of counsel

Avery also claims that the district court erred in rejecting his claims of ineffective assistance of counsel. Specifically, Avery claimed that his counsel was ineffective for failing to: (1) challenge the grand jury indictment on the ground that Detective Stahl's testimony contained inadmissible hearsay and was false and misleading; (2) challenge the sufficiency of the evidence supporting the indictment; (3) seek the suppression of statements Avery made to detectives prior to his arrest; and (4) request a psychological examination of the victims.

To state a claim of ineffective assistance of counsel sufficient to invalidate a judgment of conviction based on a guilty plea, a petitioner must demonstrate two things: (1) that his counsel's performance fell below an objective standard of reasonableness;[12] and (2) that he suffered prejudice as a result, *i.e.*, that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial.[13] The court need not address both components of the inquiry if the petitioner makes an insufficient showing on either one.[14]

### Counsel's failure to challenge the grand jury indictment

Our review of the record reveals that any challenges to the sufficiency, propriety, or admissibility of the evidence presented to the grand jury would not have been successful. It is well established in Nevada that, despite the presentation of improper or inadmissible evidence to a grand jury, an indictment will be sustained "if there is the slightest sufficient legal evidence and best in degree appearing in the record."[15] Here, the combined testimony of the victims alone was sufficient to support the grand jury's indictment. Thus,

[12]*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see also Warden v. Lyons*, 100 Nev. 430, 683 P.2d 504 (1984) (adopting the *Strickland* two-part test for ineffective assistance of counsel).

[13]*Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996).

[14]*Strickland*, 466 U.S. at 697.

[15]*Robertson v. State*, 84 Nev. 559, 561-62, 445 P.2d 352, 353 (1968); *see also Sheriff v. Badillo*, 95 Nev. 593, 594, 600 P.2d 221, 222 (1979).

even assuming that improper testimony by Detective Stahl was presented to the grand jury, Avery failed to establish either that his counsel was deficient or that he was prejudiced by counsel's alleged deficient performance, *i.e.*, that, but for counsel's failure to object to the grand jury indictment on these grounds, he would not have pleaded guilty and would have insisted on going to trial.[16] The district court did not err in rejecting the claims relating to counsel's failure to challenge the indictment.

### Counsel's failure to seek suppression of Avery's statements

Avery also contended that counsel was ineffective for failing to move for suppression of his statements to Detectives Stahl and Bishop. He argues that his statements were obtained in violation of *Miranda*[17] and were coerced.

A criminal defendant must be warned that he has the right to remain silent and to the assistance of counsel before he can be subjected to custodial interrogation.[18] ''Custody'' is defined as formal arrest or a restraint on the freedom of movement to a degree associated with formal arrest.[19] Avery had not been formally arrested when he made his statements. Accordingly, the pertinent inquiry '' 'is how a reasonable man in the suspect's position would have understood his situation.' ''[20] We consider the totality of the circumstances in deciding whether Avery was in custody; no single factor is dispositive.[21] We recently adopted the United States Supreme Court's standard of review of a district court's ''in custody'' determination for purposes of *Miranda*, and held that a district court's ''purely historical factual findings pertaining to the 'scene- and action-setting' circumstances surrounding an interrogation'' are entitled to deference and will be reviewed for clear error, whereas the district court's ultimate determination of custody and voluntari-

---

[16]We have also reviewed the underlying merits of Avery's claims and we conclude that Detective Stahl's testimony did not contain inadmissible hearsay, nor was her testimony false or misleading.

[17]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[18]*Id.* at 467-68; *Holyfield v. State*, 101 Nev. 793, 797, 711 P.2d 834, 836-37 (1985), *abrogated in part on other grounds as recognized by Boehm v. State*, 113 Nev. 910, 913 n.1, 944 P.2d 269, 271 n.1 (1997).

[19]*See Alward v. State*, 112 Nev. 141, 154, 912 P.2d 243, 251-52 (1996) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)), *overruled in part on other grounds by Rosky v. State*, 121 Nev. 184, 111 P.3d 690 (2005).

[20]*Id.* at 154, 912 P.2d at 252 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).

[21]*Id.* (citing *Beheler*, 463 U.S. at 1125).

ness will be reviewed de novo.[22] Important considerations in deciding whether or not Avery was in custody include the site of the interrogation, whether the investigation has focused on the subject, whether the objective indicia of arrest are present, and the length and form of the questioning.[23] The objective indicia of arrest include whether the suspect was told the questioning was voluntary or that he was free to leave, whether the atmosphere of questioning was police-dominated, whether the police used strong-arm tactics or deception during questioning, and whether the police actually arrested the suspect at the termination of questioning.[24]

Avery contends he was in custody because he was inside his own home and had no place to go, the two detectives arrived unannounced at midnight, ignored his request to talk another time, badgered and manipulated him and told him they believed he was guilty, he was not told the questioning was voluntary, the investigation had focused on him, and he was arrested at the conclusion of the interview.

We conclude Avery was not in custody when he made his statements and no *Miranda* warnings were therefore required. Avery was questioned in his home after inviting Detective Stahl to come there to talk with him.[25] He consented to be interviewed when Detectives Stahl and Bishop arrived, even after they offered to come back another time. While Avery had become the ''focus'' of the investigation, this focus was not the equivalent of ''focus'' for *Miranda* purposes, which involves '' 'questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' ''[26] Avery was not handcuffed or restrained in any way during the questioning. While the questioning was repetitive, it was not unduly so, and the officers did not deceive Avery or put words in his mouth. He referred to the detectives as ''guests in the house.''

---

[22]*Rosky*, 121 Nev. at 190, 111 P.3d at 694 (citing *Thompson v. Keohane*, 516 U.S. 99, 112-13 (1995) and *Miller v. Fenton*, 474 U.S. 104, 112-18 (1985)).

[23]*Alward*, 112 Nev. at 154-55, 912 P.2d at 252 (citing *People v. Celaya*, 236 Cal. Rptr. 489, 492 (Ct. App. 1987)).

[24]*State v. Taylor*, 114 Nev. 1071, 1082 n.1, 968 P.2d 315, 323 n.1 (1998).

[25]*See Miranda*, 384 U.S. at 450 (discussing the lesser intimidation usually felt by a person being interrogated in familiar surroundings); *see also Beckwith v. United States*, 425 U.S. 341 (1976) (concluding statements made by a defendant to government agents during an interview in the defendant's home were admissible against him without *Miranda* warnings because the defendant was not in custody or deprived of his freedom of action in any significant way).

[26]*Beckwith*, 425 U.S. at 347 (quoting *Miranda*, 384 U.S. at 444).

Avery does not contend the interview was problematically lengthy. Although Avery claims the detectives intended all along to arrest him, the detectives arrived in a vehicle unsuitable for transporting Avery to the police station and had to call for a patrol car when they decided to arrest him. Because Avery was not in custody during the interview, no *Miranda* warnings were required, and his counsel was not deficient for failing to seek suppression of Avery's statements on this basis. Avery also failed to demonstrate the requisite prejudice, *i.e.*, that, but for his counsel's failure to seek suppression of his statements on this ground, he would not have pleaded guilty and would have insisted on going to trial.

> *Counsel's failure to request psychological evaluations of the victims*

Avery next contends his counsel was ineffective for failing to request psychological evaluations of the victims. Avery failed to demonstrate either a compelling need for such an examination[27] or that the results of such an examination would have influenced his decision to plead guilty. "In determining whether a compelling need exists, the trial court must consider: (1) whether little or no corroboration of the offense exists beyond the victim's testimony, and (2) whether there is a reasonable basis 'for believing that the victim's mental or emotional state may have affected his or her veracity.'"[28]

Avery failed to allege the State had or intended to benefit from psychological expert testimony. Avery also failed to demonstrate a compelling need: Avery's own statements in this case corroborated the allegations. He alleges no facts to show the victims' mental or emotional states affected their veracity; instead, he merely speculates that the prior abuse and neglect the victims suffered and the counseling they were undergoing made their statements inherently unreliable. Because a motion for court-ordered psychological evaluations of the victims would not have been granted, counsel was not deficient for failing to request such an examination. Avery also

---

[27]*State v. Dist. Ct. (Romano)*, 120 Nev. 613, 97 P.3d 594 (2004). Avery requests this court to reconsider *Romano*. We conclude, however, that even under the prior standards applied in *Koerschner v. State*, 116 Nev. 1111, 13 P.3d 451 (2000), Avery failed to demonstrate that such a motion would have been successful or that he was prejudiced by counsel's failure to seek such an examination.

[28]*Romano*, 120 Nev. at 623, 97 P.3d at 600 (quoting *Koerschner*, 116 Nev. at 1117, 13 P.3d at 455).

failed to demonstrate the requisite prejudice, *i.e.*, that, but for his counsel's failure to seek psychological examinations of the victims, he would not have pleaded guilty and would have insisted on going to trial.

## CONCLUSION

We conclude Avery's *Palmer* claim fails because the rule announced in *Palmer* does not apply retroactively to Avery's conviction. We further conclude that the district court did not err in rejecting Avery's remaining claims and in concluding that Avery's guilty plea was valid.

Accordingly, we affirm the district court's order dismissing Avery's petition.