# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 8, 2012 Session

## DERRICK BRANDON BUSH v. STATE OF TENNESSEE

**Appeal from the Criminal Court of Sumner County**
**No. 308-2011     Dee David Gay, Judge**

_____

**No. M2011-02133-CCA-R3-PC - Filed June 15, 2012**

_____

Derrick Brandon Bush ("the Petitioner") pled guilty to two counts of attempt to commit rape in December 2000. On April 25, 2011, the Petitioner filed for post-conviction relief, alleging that his guilty plea was unconstitutional in light of Ward v. State, 315 S.W.3d 461 (Tenn. 2010), and that the one-year post-conviction statute of limitations should be tolled. After a hearing, the post-conviction court granted relief. The State appealed. Upon our thorough review of the record, we hold that the rule announced in Ward does not apply retroactively. Therefore, the Petitioner is not entitled to tolling of the statute of limitations pursuant to Tennessee Code Annotated section 40-30-102(b)(1). We also hold that the Petitioner is not entitled to tolling on due process grounds. Thus, the Petitioner's claim for relief is barred by the statute of limitations. Accordingly, we reverse the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Reversed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Robert E. Cooper, Jr., Attorney General & Reporter; Lindsy Paduch Stempel, Assistant Attorney General; L. Ray Whitley, District Attorney General; Sallie Wade Brown, Assistant District Attorney General, for the appellant, State of Tennessee.

J. Branden Bellar, Carthage, Tennessee, for the appellee, Derrick Brandon Bush.

**OPINION**

**I. Factual and Procedural Background**

The Defendant was charged with seven or eight counts of rape in September 2000.[1] In December 2000, the Defendant accepted a plea bargain offer and pled guilty to two counts of attempt to commit rape. Pursuant to the plea agreement, the Petitioner was sentenced to four years on each count, to be served consecutively, and suspended after one year of service in confinement. During the plea colloquy, the trial court did not inform the Petitioner that his sentence included mandatory lifetime community supervision. See Tenn. Code Ann. § 39-13-524 (Supp. 2000).

On April 25, 2011, the Petitioner filed a claim for post-conviction relief, alleging that he did not learn of the lifetime supervision requirement until "advised by his probation officer upon the expiration of his four (4) years sentence after serving one (1) year in jail."[2] He claimed that his lawyer was ineffective in failing to inform him of the requirement and that he would not have pled guilty had he been aware of the mandatory lifetime supervision requirement. He also asserted that his plea is constitutionally infirm under the rule announced in Ward v. State, 315 S.W.3d 461 (Tenn. 2010), and that the one-year statute of limitations applicable to post-conviction proceedings should be tolled.

The record on appeal does not contain the State's response. However, the post-conviction court ordered a "limited evidentiary hearing" which was held on September 8, 2011. At the hearing, the State acknowledged that "there was no mention during the [guilty plea] [s]ubmission [h]earing of lifetime supervision." The State also acknowledged that the Petitioner's trial lawyer "recall[ed] no discussion with [the Petitioner] concerning lifetime supervision." The State argued that, irrespective of what occurred before and during the plea hearing, Ward did not establish a new constitutional rule and "retroactive application is not required." Accordingly, the State asserted, the Petitioner's claim for relief was time-barred.

The Petitioner argued that Ward established a new constitutional rule and that retroactive application was required. The Petitioner acknowledged that, on the original

---

[1] The indictment is not in the record before us. The judgments of conviction refer to counts one through eight. At the plea hearing, the trial court referred to "a multi-count indictment charging . . . rape." The post-conviction court referred to "a seven count indictment for rape."

[2] We note the chronological discrepancy in the Petitioner's allegation. His effective sentence was eight years, suspended after one year of confinement. Therefore, the Petitioner should have met with his probation officer earlier than four years after sentence was imposed. Moreover, his sentence did not expire after four years, but after eight, because his sentences were ordered to be served consecutively.

judgment forms entered on his two convictions, a handwritten notation indicates "Lifetime supervision upon release."[3] The Petitioner, however, claimed that he did not receive a copy of his judgments and did not become aware of the supervision requirement until his probation officer informed him years later.

The post-conviction court noted that the Petitioner's claim for post-conviction relief had been filed outside the one-year statute of limitations, but within one year of the Ward decision. The court further found that the Petitioner was never informed of the lifetime supervision requirement in conjunction with his plea. After reviewing Ward and the post-conviction statute, the court ruled that due process considerations required tolling of the statute of limitations and that, pursuant to Ward, the Petitioner's guilty plea was constitutionally infirm. Based upon these rulings, the post-conviction court granted relief. The State now appeals the grant of post-conviction relief.

## II. Analysis

### A. Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims that the statute of limitations must be tolled, our review is de novo with no presumption of correctness. See, e.g., Smith v. State, 357 S.W.3d 322, 355 (Tenn. 2011).

---

[3] The amended judgment order entered on Count 3 does not contain a reference to lifetime supervision.

*B. The Post-Conviction Statute of Limitations*

At issue in this case is whether the Petitioner is entitled to post-conviction relief in spite of his claim for relief having been filed more than ten years after his judgments of conviction became final, clearly later than the one-year statute of limitations applicable to petitions for post-conviction relief. See Tenn. Code Ann. § 40-30-102(a) (2006). The Petitioner is claiming that he is entitled to have the statute of limitations tolled on the basis of the Tennessee Supreme Court's recent decision in Ward, which he argues established a new rule of constitutional law that must be applied retroactively to cases on collateral review. See id. § 40-30-102(b)(1). The State contends that Ward did not establish a new constitutional right, but "merely clarified the responsibility of the trial courts to ensure the protection of a defendant's already-existing constitutional Due Process rights under the Fifth Amendment of the United States Constitution."

The Petitioner's argument stems from a very narrow exception to the one-year post-conviction statute of limitations, which provides that a petitioner may be entitled to have the limitations period tolled where "[t]he claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required." Tenn. Code Ann. § 40-30-102(b)(1). The plain language of this provision makes clear that any claim thereunder is subject to a two-prong inquiry. The first prong is whether there has been a new rule of constitutional law established. If the answer to this question is affirmative, then the second prong requires a determination of whether the new rule must be applied retrospectively to cases on collateral review. See, e.g., Rene S. Guevara v. State, No. W2011-00207-CCA-R3-PC, 2012 WL 938984, at *2-3 (Tenn. Crim. App. Mar. 13, 2012) (in analyzing whether a United States Supreme Court decision entitled the petitioner to tolling pursuant to section -102(b)(1), this Court first determined that the decision established a new rule and, second, considered whether the decision applied retroactively to cases on collateral review).

Thus, in analyzing the Petitioner's claim, we must determine whether the Tennessee Supreme Court's recent decision in Ward v. State established a new rule of constitutional law and, if so, whether it must be applied retroactively in cases on collateral review. This is an issue of first impression before this Court. We begin our analysis by recognizing the existence of differing statutory and common law approaches regarding the analytical framework to utilize in addressing this issue. We first attempted to reconcile these differing approaches. Unfortunately, despite our best efforts, this is a feat we have been unable to accomplish. Lacking the authority to resolve these differences, we will analyze both prongs of our inquiry under both the statutory approach and the common law approach.

## C. The *Ward* Decision

At issue in Ward was whether the petitioner's guilty plea was constitutionally infirm because the trial court did not inform him that, as a result of his plea of guilty to aggravated sexual battery, he was subject to "a mandatory sentence of community supervision for life in addition to his incarceration." Ward, 315 S.W.3d at 465. Recognizing that "[c]ourts are constitutionally required to notify defendants of only the direct consequences – not the collateral consequences – of a guilty plea," id. at 467, the court proceeded to analyze whether the lifetime community supervision requirement was a direct or collateral consequence of the petitioner's guilty plea. Concluding that the requirement was a punitive, and therefore direct, aspect of the petitioner's sentence, the court held:

> the mandatory sentence of lifetime supervision imposed in addition to other statutorily authorized punishment is a direct and punitive consequence of a plea of guilty to the crimes enumerated in Tennessee Code Annotated section 39-13-524(a). Consequently, trial courts have an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea.

Id. at 476.

In short, our supreme court construed a state statute, within the context of the federal and state constitutional paradigms for valid guilty pleas, in order to determine whether the statutorily mandated lifetime community supervision requirement for sex offenses was a direct or collateral consequence of conviction. In so doing, our supreme court issued an opinion that impacts a criminal defendant's due process rights under the federal and state constitutions and required that a defendant pleading guilty to certain offenses be informed of the lifetime community supervision aspect of his or her sentence.

## D. Whether *Ward* Announced a New Rule

We turn now to the first prong of our inquiry: whether Ward announced a new rule of constitutional law.

### 1. The Statutory Analysis

From a statutory analysis perspective, our Post-Conviction Procedure Act ("the Act"), Tenn. Code Ann. § 40-30-101 through -122 (Supp. 2011, 2006), provides that, "[f]or purposes of this part, a new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds." Tenn. Code Ann.

§ 40-30-122 (2006).  In analyzing this statutory provision, we have reviewed this Court's previous decision in Ward, in which a majority of the panel held that the lifetime supervision requirement was merely a collateral consequence of the petitioner's conviction.  See Marcus Ward v. State, No. W2007-01632-CCA-R3-PC, 2009 WL 113236, at *9-11 (Tenn. Crim. App. Jan. 14, 2009).  The fact that Ward resulted in a split panel, and that the majority's decision was subsequently reversed, makes clear that the supreme court's ruling in Ward was not dictated by precedent existing at the time the Petitioner's convictions became final.  Moreover, the dissenting opinion in this Court's decision in Ward, opining that the lifetime supervision requirement was a direct and punitive consequence of the petitioner's conviction, makes clear that, pursuant to section -122, "application of the rule was susceptible to debate among reasonable minds." See id. at *11 (Tipton, J., dissenting).  See also Chad Alan Parker v. State, No. M2007-02799-CCA-R3-PC, 2008 WL 2938046, at *8 (Tenn. Crim. App. July 31, 2008) (majority concluded that the petitioner was entitled to post-conviction relief on his best-interest guilty plea because his lawyer misinformed him about the lifetime community supervision requirement; one judge dissented on the basis that the lifetime supervision requirement was merely a collateral consequence).  Accordingly, under our statutory analysis, we conclude that Ward announced a new rule of constitutional criminal law as defined by section -122.

## 2. The Common Law Analysis

We note that the language in section -122 of the Act initially became effective on May 10, 1995.[4]  See 1995 Tenn. Pub. Acts ch. 207, §§ 1, 3.  Nevertheless, the Tennessee Supreme Court, in considering a motion to reopen a post-conviction petition filed in 1997, subsequently has stated that "[a] case 'announces a new rule when it breaks new ground or imposes a new obligation on the States or Federal government.'"  Van Tran v. State, 66 S.W.3d 790, 810-11 (Tenn. 2001) (quoting Teague v. Lane, 489 U.S. 288, 301 (1989)).  In Van Tran, the court was considering whether its holding in that case "that the execution of mentally retarded persons violates the Eighth Amendment to the United States Constitution and article I, § 16 of the Tennessee Constitution constitutes a new rule warranting retroactive application."  Id. at 810.  Without reference to section -122's definition of "new rules," the Van Tran court stated,

> A case "announces a new rule when it breaks new ground or imposes
> a new obligation on the States or the Federal government." Teague v. Lane,
> 489 U.S. 288, 301, 109 S. Ct. 1060, 1070, 103 L. Ed.2d 334 (1989) (citations
> omitted).  In other words, "a case announces a new rule if the result was not

---

[4] Tennessee Code Annotated section 40-30-122 was initially codified at Tennessee Code Annotated section 40-30-222.  See Tenn. Code Ann. § 40-30-222 (Supp. 1995).

*dictated* by precedent existing at the time the defendant's conviction became final." Id.; see also Meadows v. State, 849 S.W.2d 748, 751 (Tenn. 1993).

Van Tran, 66 S.W.3d at 810-11. The Van Tran court did not address its reliance on federal case law for the appropriate analytical framework for determining what constitutes a new rule, instead of the language of section -122. While the standard utilized in Van Tran varies somewhat from the statutory language, we also hold that Ward announced a new rule of constitutional law under this standard, as well, because it imposed a new obligation on trial courts: to inform defendants pleading guilty to certain crimes of the direct and punitive consequence of lifetime community supervision. And, for the same reasons set forth above, this Court's decision in the Ward case makes clear that our supreme court's decision in Ward "was not *dictated* by precedent existing at the time the defendant's conviction became final." Van Tran, 66 S.W.3d at 811.

Moreover, we note that, in determining that the lifetime community supervision requirement was a punitive and direct consequence of a sex offense conviction, the Ward court cited with approval a case from the Nevada Supreme Court, Palmer v. State, 59 P.3d 1192 (Nev. 2002). Ward, 315 S.W.3d at 475. In Palmer, the Nevada Supreme Court held that the mandatory sentence of lifetime supervision imposed for a conviction of attempted sexual assault was a direct consequence, of which the defendant must be made aware before entering a guilty plea to such offense. Palmer, 59 P.3d at 1193, 1196. Subsequently, in Avery v. State, 129 P.3d 664 (Nev. 2006), the Nevada Supreme Court turned its attention to whether its holding in Palmer must be applied retroactively in cases on collateral review and determined that Palmer announced a new rule:

> Far from merely interpreting or clarifying an existing rule, in Palmer we explored whether lifetime supervision was a direct consequence or a collateral consequence of a guilty plea to a sexual offense. We also concluded that lifetime supervision was not analogous to previously considered cases, e.g., we specifically concluded that lifetime supervision was not analogous to parole, which we had previously determined was a collateral consequence of a guilty plea.

Id. at 668. The Ward court conducted a similar analysis. Accordingly, we find Avery persuasive in our determination that Ward announced a new constitutional rule under our supreme court's standard.

### E. Retroactivity of *Ward*

Having concluded that Ward announced a new rule, we turn to the second prong of our inquiry: whether Ward must be applied retroactively to cases on collateral review, such

as the instant case.  Again, we will again analyze <u>Ward</u>'s retroactivity under both the statutory and common law approaches.

## 1.  The Statutory Analysis

The Act provides that "[a] new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless [1] the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or [2] requires the observance of fairness safeguards that are implicit in the concept of ordered liberty." Tenn. Code Ann. § 40-30-122.  The <u>Van Tran</u> court did parenthetically describe this statutory provision as "citing the <u>Teague</u> [v. Lane, 489 U.S. 288 (1989)] standard for retroactivity." <u>Van Tran</u>, 66 S.W.3d at 811.

In <u>Teague</u>, the United States Supreme Court held that a new federal constitutional rule would generally not be applicable retroactively in federal habeas corpus actions, with two exceptions:  (1) the new rule places "primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," <u>Teague</u>, 489 U.S. at 311 (internal quotation marks omitted), and (2) the rule is a watershed rule of criminal procedure that is implicit in the concept of ordered liberty, i.e. an "absolute prerequisite to fundamental fairness." <u>Id.</u> at 311, 314.  The first exception clearly is not at issue in this case.  As to the second exception, the high court has explained that a "watershed rule" is one that, first, "must be necessary to prevent an impermissibly large risk of an inaccurate conviction," and, second, "must alter our understanding of the bedrock procedural elements essential to the fairness of the proceeding." <u>Whorton v. Bockting</u>, 549 U.S. 406, 418 (2007) (internal quotation marks omitted).

Notably, we also find helpful the United States Supreme Court's description of the narrow nature of the second <u>Teague</u> exception that, if met, requires retroactivity:

> We have repeatedly emphasized the limited scope of the second <u>Teague</u> exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty.  And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second <u>Teague</u> exception.

<u>Beard v. Banks</u>, 542 U.S. 406, 417 (2004) (internal quotation marks and citations omitted).
Providing an example of a new rule that might satisfy the second <u>Teague</u> exception, the <u>Banks</u> court referred to <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), which established an

affirmative right to counsel in felony cases. <u>Banks</u>, 542 U.S. at 417. <u>See also</u> <u>Humphress v. United States</u>, 398 F.3d 855, 862-863 (6th Cir. 2005) (discussing cases announcing new rules that were held not retroactive under the second <u>Teague</u> exception).

In determining whether <u>Ward</u>'s new rule must be applied retroactively pursuant to the section -122/federal standard, we find instructive this Court's prior analysis of whether the United States Supreme Court's decision in <u>Padilla v. Kentucky</u>, ___ U.S. ___, 130 S. Ct. 1473 (2010), should be given retroactive application to cases on collateral review. <u>See, e.g.</u>, <u>Rene S. Guevara</u>, 2012 WL 938984. In <u>Padilla</u>, the United States Supreme Court addressed a claim of ineffective assistance of counsel and held that the defense lawyer's performance was deficient because he did not inform his client about potential adverse immigration consequences of a guilty plea. <u>Padilla</u>, 130 S. Ct at 1483. In <u>Rene S. Guevara</u>, the petitioner pled guilty in 1995 to the felony offense of possession of marijuana with intent to sell. <u>Rene S. Guevara</u>, 2012 WL 938984, at *1. Fifteen years later, he filed for post-conviction relief on the basis that, contrary to <u>Padilla</u>, his lawyer failed to inform him about the immigration consequences of his plea. <u>Id.</u> This Court recognized that <u>Padilla</u> announced a new federal rule, <u>id.</u> at *3, but concluded that "retroactive application of the rule announced in <u>Padilla</u> is not warranted." <u>Id.</u> In so concluding, this Court referred to the federal standard of retroactivity, set forth in <u>Teague</u>, and held that the new rule announced in <u>Padilla</u> "does not implicate either [<u>Teague</u>] exception." <u>Id.</u> <u>See also</u> <u>Ivano Stamegna v. State</u>, No. E2011-00107-CCA-R3-PC, 2011 WL 5971275, at *5 (Tenn. Crim. App. Nov. 29, 2011) (declining to apply <u>Padilla</u> retroactively in post-conviction proceeding); <u>Konstantinos Diotis v. State</u>, No. W2011-00816-CCA-R3-PC, 2011 WL 5829580, at *1 (Tenn. Crim. App. Nov. 17, 2011) (same).[5]

This Court's analysis of the retroactivity of <u>Padilla</u> is instructive because, like <u>Ward</u>, <u>Padilla</u> concerned the information that must be provided to a defendant pleading guilty about the consequences of his or her plea. Similarly, both <u>Padilla</u> and <u>Ward</u> held that a defendant must be informed about serious adverse consequences resulting (or, in the case of deportation, potentially resulting) from a guilty plea. Accordingly, we hold that the new rule announced in <u>Ward</u> does not require retroactive application to cases on collateral review.

### 2. The Common Law Analysis

In <u>Van Tran</u>, our supreme court set forth the test for retroactivity as follows: "'a new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if

---

[5] The issue of whether <u>Padilla</u> created a new rule and is to be applied retroactively is currently pending before the United States Supreme Court. <u>See</u> <u>Chaidez v. United States</u>, 655 F.3d 684 (7th Cir. 2011), <u>cert. granted</u>, 80 U.S.L.W. 3429 (U.S. Apr. 30, 2012) (No. 11-820).

the new rule materially enhances the integrity and reliability of the fact finding process of the trial.'" Van Tran, 66 S.W.3d at 811 (quoting Meadows v. State, 849 S.W.2d 748, 755 (Tenn. 1993)). And, in Meadows, from whence this articulation stems, the court added, "Stated another way, we have held retroactive application necessary when the old rule substantially impairs the truth-finding function of the trial and thereby raises serious questions about the accuracy of guilty verdicts in past trials." Meadows, 849 S.W.2d at 754 (citing Hellard v. State, 629 S.W.2d 4, 7 (Tenn. 1982)). Interestingly, the Meadows court specifically declined to adopt the federal standard for retroactivity. See Meadows, 849 S.W.2d at 754-55.

Again, the Van Tran court did not explain its reliance on Meadows, a case that predates the relevant provision of the Act, as opposed to the relevant statutory language now set forth in section -122. See also Wiley v. State, 183 S.W.3d 317, 327-28 (Tenn. 2006) (holding in post-conviction proceeding that its decisions in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), and State v. Ely, 48 S.W.3d 710 (Tenn. 2001), were not to be applied retroactively, referring to "the integrity and reliability of the fact-finding process" but not to section -122). Likewise, the Meadows decision did not delineate the precise difference in the contours of the state and federal standards.

In any event, we also hold that the new rule announced in Ward is not required to be applied retroactively in this collateral review proceeding under the Van Tran/Meadows standard for retroactive application of new state rules of constitutional law. Again, we turn to the Nevada Supreme Court's decision in Avery for guidance. As explained above, in Avery the court concluded that its decision in Palmer announced a new rule. The court then considered whether the new rule was retroactive under the following state standard: whether it "establishe[d] a procedure without which the likelihood of an accurate conviction is seriously diminished." Avery, 129 P.3d at 668. The court held that this criterion of retroactivity was not satisfied:

> We can envision few cases in which the accuracy of a conviction of a defendant who pleads guilty to a sexual offense will be *seriously* diminished by the failure to advise the defendant of a mandatory sentence of lifetime supervision. While such advice may influence some defendants to reject a plea offer and insist on going to trial, decisions to plead guilty will generally turn on other factors, including the potential sentence, the State's agreement to forgo other charges, the risk of habitual criminal adjudication, prior convictions, the strength of the State's case, and any other concessions or sentencing recommendations the State may be willing to make.

Id. We recognize, of course, that the standard for retroactivity utilized by Nevada courts is somewhat different from both of our approaches. Nevertheless, the intention of each standard is the same: an accurate conviction which is reliable and sound and obtained

through the observance of fundamental fairness safeguards. Therefore, we find Avery to be instructive and persuasive.

We also agree with the Nevada Supreme Court that many factors enter into a defendant's choice to plead guilty to a sexual offense. Thus, although the lifetime supervision requirement is certainly significant, it is not so onerous that a defendant's ignorance about it renders his plea at odds with fundamental fairness or seriously undercuts the integrity and reliability of the plea process. We emphasize that the Meadows standard looks to the "fact-finding process" that results in the conviction. Of course, trial courts must "determine that there is a factual basis" for a defendant's guilty plea, Tenn. R. Crim. P. 11(b)(3), which generally includes a defendant's acknowledgment of the State's proof. We, however, fail to see how the defendant's knowledge, or lack thereof, of the lifetime community supervision requirement has any material impact on this fact-finding aspect of his or her guilty plea.

Additionally, we are guided by a comparison between the new rule announced in Ward and new rules that our supreme court has found must be applied retroactively. For instance, in Barber v. State, the court held that the rule previously announced in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), would be given retroactive application:

> We now hold that the rule in Middlebrooks materially enhances both the integrity and the reliability of the fact finding process in the sentencing phase of a capital trial and should therefore be applied retroactively.
>
> The constitutional concern in Middlebrooks was that the class of death-eligible murderers be narrowed so that only the worst offenders receive the death penalty. The Court [in Middlebrooks] observed that the felony murder aggravating circumstance duplicates the crime of felony murder and thereby makes all felony murderers susceptible to the death penalty. This Court found that such a result violates the Eighth Amendment to the United States Constitution, as well as Article I, Section 16 of the Tennessee Constitution. When an aggravating circumstance is improperly injected into the process by which the jurors must weigh aggravating and mitigating circumstances to determine a sentence, the integrity and reliability of the sentencing process is jeopardized because the death penalty may not be reserved for only the most culpable defendants. For this reason, we apply Middlebrooks retroactively under the Meadows rule.

Barber, 889 S.W.2d 185, 186-87 (Tenn. 1994) (citations omitted). An earlier example is the standard of attorney competence announced in Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), held to require retroactive application by the Tennessee Supreme Court because "the impairment of the fact-finding function of the trial is substantial if the defendant is denied

the benefit of counsel whose representation is reasonably competent under the Baxter rule[.]" Hellard, 629 S.W.2d at 6. Significantly, the Hellard court also noted that "retroactive application of the Baxter rule has not and is not likely to result in the wholesale unsettling of final judgments of conviction." Id.

These cases illustrate that new rules found to have retroactive application in collateral proceedings have a profound impact on the underlying fairness and reliability of the process by which a conviction and/or sentence is imposed. Only those rules reaching so deeply into the process of a criminal trial or plea proceeding that the very essence of the proceeding is altered should be given retroactive effect in collateral cases. We emphasize that "[a] factor which weighs heavily against retroactive application is the prospect that the integrity of the fact-finding process at trial will not be materially enhanced, coupled with the wholesale unsettling of final judgments of conviction." State v. Robbins, 519 S.W.2d 799, 801 (Tenn. 1975). In this instance, we conclude that the fact-finding process of guilty pleas will not be materially enhanced by retroactive application of Ward. Moreover, retroactive application likely would result in the wholesale unsettling of long-standing final judgments of conviction.

In sum, we hold that Ward announced a new rule, but that new rule is not applicable retroactively in post-conviction proceedings. For the reasons set forth above, the new rule announced in Ward is not a watershed rule of criminal procedure, nor does it materially enhance the integrity and reliability of the plea process near the degree necessary to require retroactive application. Accordingly, the one-year statute of limitations applicable to the Petitioner's claim for relief may not be tolled on the basis of the Ward decision pursuant to Tennessee Code Annotated section 40-30-102(b)(1).

*F. Due Process Tolling*

The Petitioner also argued, and the trial court held, that due process considerations required tolling of the statute of limitations. See Burford v. State, 845 S.W.2d 204, 208-09 (Tenn. 1992). In Burford, our supreme court held that due process considerations may require that the post-conviction statute of limitations be tolled when application of the limitations period denies the petitioner a fundamental right. Id. at 209-10. Examples of due process concerns which may require tolling the one-year statute of limitations include the petitioner's mental incompetence during the limitations period, see Seals v. State, 23 S.W.3d 272, 279 (Tenn. 2000), and the withholding of exculpatory evidence by the prosecution during the limitations period, see Sample v. State, 82 S.W.3d 267, 272-76 (Tenn. 2002). An attorney's active misrepresentations to his client about the status of his or her case may also require tolling on due process grounds. See Williams v. State, 44 S.W.3d 464, 471 (Tenn. 2001).

Our supreme court has emphasized, however, that "[i]n every case in which [it has] held the statute of limitations . . . tolled, the pervasive theme is that circumstances *beyond a petitioner's control* prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations." Smith v. State, 357 S.W.3d 322, 358 (Tenn. 2011). Thus, if an attorney's misconduct misleads the petitioner into believing that the attorney is seeking post-trial relief on the petitioner's behalf and the petitioner thereby misses the post-conviction filing deadline, due process tolling of the statute of limitations may be appropriate. See Williams, 44 S.W.3d at 470-71. Conversely, and significantly for the instant case, our supreme court also declared in Smith that an attorney's "[n]egligence, as opposed to deception or misconduct, would not be sufficient to toll the statute." Smith, 357 S.W.3d at 358.

The record in this case demonstrates, at most, that the Petitioner's lawyer was negligent in failing to review with the Petitioner, and/or provide to him, a copy of the judgment orders on which is plainly printed, "Lifetime supervision upon release." This is not a sufficient basis on which to toll the one-year statute of limitations on due process grounds. Id. Moreover, even when due process requires that the statute of limitations be tolled, an aggrieved defendant may not sit on his hands for an extended period of time after learning that he has potential grounds for relief. Although the supreme court has declined to establish a "bright line rule" for the applicable statute of limitations that should apply to an alleged late-arising claim for post-conviction relief, see Wright v. State, 987 S.W.2d 26, 30 (Tenn. 1999), it has certainly indicated that the timeliness of the petitioner's eventual filing is a relevant circumstance, see, e.g., Sample, 82 S.W.3d at 275-76. Indeed, this Court has held that two years is too long to wait after learning of late-arising grounds for filing a petition for post-conviction relief. See Tyrone Chalmers v. State, No. W2003-02759-CCA-R3-PC, 2005 WL 1249072, at *3 (Tenn. Crim. App. May 23, 2005). See also State v. Dana Louise Solomon, No. E2008-01713-CCA-R3CD, 2009 WL 3247427, at *1 (Tenn. Crim. App. Oct. 9, 2009) (due process tolling denied where petitioner failed to explain four-year delay in filing after alleged grounds for tolling ceased).

In this case, the Petitioner pled guilty in December 2000. According to his petition, he learned about the lifetime community supervision requirement "when advised by his probation officer upon the expiration of his four (4) year sentence after serving one (1) year in jail." Accordingly, by the Petitioner's own admission, he learned about this aspect of his sentence no later than December 2004. At that time, even without the benefit of the Ward case, he could have filed a petition for post-conviction relief on the same grounds that petitioner Ward did: that his plea was constitutionally infirm because he was not made aware of the lifetime community supervision requirement in conjunction with pleading guilty. Additionally, like now, he could have asserted due process grounds for tolling the expired statute of limitation. The Petitioner chose not to do so. He should not now be heard to complain. We hold that, irrespective of whether the Petitioner was entitled to an initial

-13-

tolling of the one-year post conviction statute of limitations on due process grounds because he did not learn of the lifetime community supervision requirement until after the limitations period had run, he was not entitled to have the statute tolled for an additional period of seven years. Accordingly, the post-conviction court erred in so ruling.

In sum, the Petitioner's claim for post-conviction relief is time-barred. Accordingly, he is not entitled to relief.

### III. Conclusion

For the foregoing reasons, we reverse the post-conviction court's judgment granting the Petitioner post-conviction relief.

_____
JEFFREY S. BIVINS, JUDGE