# IN THE SUPREME COURT OF THE STATE OF NEVADA

CODY WILLIAMS GEDDINGS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61849

FILED

FEB 2 5 2016

*ORDER OF REVERSAL AND REMAND*

This is an appeal from a judgment of conviction of one count of second-degree felony murder by child neglect and one count of child neglect with substantial bodily harm. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

Appellant Cody Geddings challenges his judgment of conviction, arguing that there was insufficient evidence to support his convictions, that the two counts violate the Double Jeopardy Clause, and that statements he made during interrogation should have been suppressed pursuant to *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).[1]

---

[1]Geddings also argues that the district court erred in denying his motion for a new trial because the second amended information failed to provide sufficient notice of the prosecution's theory and because the statutes under which he was convicted are unconstitutionally vague. We conclude that this argument lacks merit. *See Noonan v. State*, 115 Nev. 184, 188-89, 980 P.2d 637, 639-40 (1999) (concluding that an indictment alleging murder by child abuse provided sufficient notice to support a conviction of second-degree felony murder by willful endangerment or neglect of a child). In addition, Geddings argues that the district court abused its discretion in denying his motion to dismiss, or, in the alternative, request for an adverse inference instruction, because the State failed to preserve certain evidence. We conclude that this argument is

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

We find that his first two arguments are without merit. As to his motion to suppress the statements he made during his interrogation, he argues the district court should have ruled that he was in custody for the purposes of *Miranda* because he did not reasonably believe that he was free to leave when being interviewed at the police station. We agree and, thus, reverse the district court's judgment of conviction and remand this matter for a new trial.

*Sufficiency of the evidence*

Geddings argues that the State failed to prove that he committed second-degree felony murder or substantial bodily harm beyond a reasonable doubt. The standard of review for a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotations omitted). In rendering its decision, the jury is tasked with "assess[ing] the weight of the evidence and determin[ing] the

---

*...continued*

also without merit because the evidence was not material and the failure to gather the evidence was not negligent, grossly negligent, or based on bad faith. *Daniels v. State*, 114 Nev. 261, 267, 956 P.2d 111, 115 (1998). Finally, Geddings further challenges his conviction on the following grounds: (1) prosecutorial misconduct; (2) the district court improperly admitted evidence of his prior judgment of conviction for child endangerment; (3) the district court abused its discretion in denying his motion to strike expert testimony; (4) the district court abused its discretion in denying his *Batson* challenge; (5) the district court abused its discretion in denying his challenges for cause; and (6) cumulative error. Because we are reversing and remanding for a new trial based upon the suppression issue, we need not address Geddings' remaining claims.

credibility of witnesses." *Id.* at 202-03, 163 P.3d at 414 (internal quotations omitted). A jury is free to rely on both direct and circumstantial evidence in returning its verdict. *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980).

The jury in this case heard evidence regarding Geddings' statement to police wherein he stated that while he was working on a car, he placed a large and heavy tank on a "wobbly" chair and then allowed a sixteen-month-old child to play in the area. He further admitted that he saw the child by the tank, pushing on the chair. As such, a rational jury could have determined that it was "inherently dangerous" for Geddings to place the heavy tank on the unstable chair and to allow the child near it without properly supervising her, and that Geddings' actions were a direct cause of the child's death. *Sheriff, Clark Cty. v. Morris*, 99 Nev. 109, 118-19, 659 P.2d 852, 859-60 (1983); *see also* NRS 200.070(1).

Geddings further stated that after the accident he noticed the child was pale, stiff, and unresponsive, but he still failed to get her medical attention. The State presented expert witness testimony from a physician who testified that timing is critical with brain injuries and that any additional time without medical assistance under these circumstances can be the difference between life and death. Accordingly, a rational trier of fact could have determined that Geddings' failure to get the child medical attention after she suffered a head injury caused either "[b]odily injury which creates a substantial risk of death," or "protracted loss or impairment of [brain] function." NRS 0.060(1).

Thus, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Rose*, 123 Nev. at 202, 163 P.3d at 414.

*Double jeopardy*

Geddings also argues that the district court erred in refusing to dismiss count two because it violates the Double Jeopardy Clause. "The Double Jeopardy Clause protects against . . . multiple punishments for the same offense." *Jackson v. State*, 128 Nev., Adv. Op. 55, 291 P.3d 1274, 1278 (2012). This court utilizes the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine the permissibility of multiple convictions for the same act or transaction. *Jackson*, 128 Nev., Adv. Op. 55, 291 P.3d at 1278. In *Blockburger*, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a[n additional] fact which the other does not." 284 U.S. at 304. This court reviews de novo issues of double jeopardy. *Jackson*, 128 Nev., Adv. Op. 55, 291 P.3d at 1277.

Here, the elements of child neglect are present in both counts. However, child neglect with substantial bodily harm also requires that the victim suffer either "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ," or "[p]rolonged physical pain." NRS 0.060(1)-(2). In contrast, felony murder by child neglect does not require any of those elements; but instead requires that the underlying felony be "inherently dangerous" and that there be "an immediate and causal relationship between the felonious conduct . . . and the death of the [child]," which are not elements of child neglect with substantial bodily harm. *Sheriff, Clark Cty.*, 99 Nev. at 119,

659 P.2d at 860; *see also* NRS 200.070(1) (providing that murder includes the "involuntary killing . . . in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent"). Therefore, because each offense contains an element that the other does not, we conclude in this case that double jeopardy does not preclude a charge of second-degree felony murder by child neglect and a charge of child neglect with substantial bodily harm.

*Motion to suppress*

Finally, Geddings argues that he was in custody while being interrogated and, therefore, was entitled to a *Miranda* warning. *Miranda v. Arizona* requires that a suspect in custody be given the proper warnings prior to interrogation, and, if adequate warnings are not given, "no evidence obtained as a result of interrogation can be used against him." 384 U.S. 436, 479 (1966). "[A]n individual is deemed 'in custody' where there has been a formal arrest, or where there has been a restraint on freedom of movement of the degree associated with a formal arrest so that a reasonable person would not feel free to leave." *State v. Taylor*, 114 Nev. 1071, 1082, 968 P.2d 315, 323 (1998). When reviewing "in custody" determinations "[t]he district court's purely historical factual findings pertaining to the 'scene- and action-setting' circumstances surrounding an interrogation is entitled to deference and will be reviewed for clear error." *Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005). "However, the district court's ultimate determination of whether a person was in custody . . . will be reviewed de novo." *Id.*

"We consider the totality of the circumstances in deciding whether [a defendant] was in custody; no single factor is dispositive."

*Avery v. State*, 122 Nev. 278, 286, 129 P.3d 664, 670 (2006). "Important considerations in deciding whether or not [a defendant] was in custody include the site of the interrogation, whether the investigation has focused on the subject, whether the objective indicia of arrest are present, and the length and form of the questioning." *Id.* at 287, 129 P.3d at 670; *see also Taylor*, 114 Nev. at 1082 n.1, 968 P.2d at 323 n.1 (setting forth factors to consider when determining whether objective indicia of arrest are present).

Here, according to the record, detectives were attempting to contact Geddings to talk to him about an incident involving his girlfriend's infant daughter who was injured while Geddings was caring for her. The child suffered a severe skull fracture that her treating physicians said could not have occurred as a result of the child falling from her playpen, as Geddings had earlier indicated. A detective eventually spoke with Geddings after staking out his mother's house, initiating a traffic stop after his mother left her home, and asking her to call Geddings. Geddings voluntarily agreed to meet with law enforcement at a casino parking lot; however, shortly after he arrived, approximately five police cars pulled up and multiple uniformed officers drew their guns and ordered Geddings out of his car. Geddings was then handcuffed, searched, and placed in the back of a squad car. Geddings was eventually transferred to the front seat of the detective's unmarked car and reluctantly agreed to be taken to the police station to be interviewed. His personal items, which were removed when he was searched in the casino parking lot, were not returned to him prior to the interview.

Once at the police station, Geddings was placed in an interrogation room but was never *Mirandized*. There is also a dispute as

to when Geddings' handcuffs were removed—Geddings testified that they were not removed until after he was placed in the interrogation room, and a detective testified that he thought he removed the handcuffs prior to transporting Geddings to the police station. Nonetheless, Geddings was clearly the focus of the investigation because the child-victim's mother identified him as the only person with the child when the injury occurred. Although the interrogation was not extremely long, it did last two hours, and it consisted of a number of law enforcement tactics unduly designed to promote confessions, including telling Geddings that only a "monster" would hurt a child and that if he admitted the truth it may help save the child's life. At the conclusion of the interview, Geddings was arrested.

A full review of the record, taking into account the totality of the circumstances, indicates that Geddings was in custody for the purposes of *Miranda* because a reasonable person in his situation would not feel free to leave. Therefore, we conclude that the admission of Geddings' statements into evidence was in error.

Reversal is mandated when an error is of a constitutional dimension, unless the error is determined to be harmless beyond a reasonable doubt. *See Diomampo v. State*, 124 Nev. 414, 428, 185 P.3d 1031, 1040 (2008) ("[R]eversal is unwarranted if we conclude without reservation that the verdict would have been the same in the absence of error." (internal quotations omitted)). Geddings originally maintained that the child was injured when she fell from her playpen. It was only after Geddings' was taken to the police station for interrogation that he changed his story to the child being hit on the head by a large tank that fell off a wobbly chair. Because we are not convinced that the admission of Geddings' statements was harmless beyond a reasonable doubt, we

conclude that the judgment of conviction must be reversed and this matter remanded for a new trial.

Accordingly, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for a new trial.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:    Hon. Douglas W. Herndon, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk